PERRY (DETROIT STOVE WORKS v.). See Case No. 3,835.

PERRY (HADEN v.). See Case No. 5,893.

## Case No. 11,006.

### PERRY v. LANGLEY.

[1 N. B. R. 559 (Quarto, 155);[1] 1 Am. Law T. Rep. Bankr. 34; 7 Am. Law Reg. (N. S.) 429.]

District Court, S. D. Ohio. March. 1868.

ACT OF BANKRUPTCY — ASSIGNMENT UNDER STATE LAW.

1. A general assignment by an insolvent debtor, though made for the benefit of all his creditors, is an act of bankruptcy under the bankrupt act of March 2d, 1867 [14 Stat. 517].

[Approved in Spicer v. Ward. Case No. 13,-241. Cited in Re Cohn, Case No. 2,966; Globe Ins. Co. v. Cleveland Ins. Co., Id. 5,-486.]

2. Where a creditor is about to get a judgment against his debtor, and the latter makes a general assignment under a state insolvent law for the benefit of his creditors. this is a conveyance with intent to delay, defraud, and hinder the creditor, and is an act of bankruptcy under section 39 of the bankrupt act.

[Overruled in Langley v. Perry. Case No. 8,-067. Cited in Re Louis. Id. 8,527. Approved in Spicer v. Ward, Id. 13,241. Cited in Rison v. Knapp, Id. 11,861; Globe Ins. Co. v. Cleveland Ins. Co., Id. 5,486.]

3. It comes also under the description of a conveyance to defeat or delay the operation of the bankrupt act.

[Approved in Spicer v. Ward, Case No. 13,-241.]

---

[1] [Reprinted from 1 N. B. R. 559 (Quarto, 155), by permission.]

4. Where a debtor made an assignment under a state insolvent law, and a creditor applied to the state court to have the security of the assignees increased, this was not such an assent to the proceedings as estopped him from claiming that the assignment was an act of bankruptcy.

[Cited in Re Schuyler, Case No. 12,494; Re Williams. Id. 17,706; Re Kraft. 3 Fed. 893; Judson v. Courier Co., 8 Fed. 426.]

5. A debtor made an assignment under the insolvent law of Ohio, on May 25, 1867, and under it, a state court took cognizance of the matter. On July 17th, a petition in bankruptcy was filed by a creditor. *Held*, that as to this matter the bankrupt act of 1867 was in force on May 25th, and the United States court could rightfully take jurisdiction of the whole matter under the petition filed in July.

[Cited in Re Merchants' Ins. Co., Case No. 9,441; Re Bunster, Id. 2,136; Re Brinkman, Id. 1,884.]

This was a petition in bankruptcy, under the act of 1867, praying that Wm. H. Langley be declared a bankrupt. The only distinct act of bankruptcy alleged in the petition is that Langley, then being largely insolvent, on the 25th day of May, 1867, executed an assignment of all his property to two assignees, named in trust for the benefit of all his creditors. This assignment is alleged to be fraudulent and void; as intended, first, to delay, defraud, or hinder his creditors; second, to defeat or delay the operation of the bankrupt law. Langley filed an answer, admitting the assignment of his property as alleged in the petition, and his utter insolvency at the date of its execution; but denied, explicitly, that it was fraudulent, either in fact or in law, or that it was intended to defeat or delay the operation of the bankrupt act. He averred that his object was to prevent the petitioning creditor, Perry, from obtaining an unjust preference over other creditors, and to secure an equal distribution of his property among all his creditors. The facts were, that Langley had been engaged in business at Gallipolis; that in the spring of 1866 he became embarrassed in his pecuniary affairs; that prior to the 25th of May, 1867,—the date of the assignment,—with an admission of his hopeless insolvency, he assigned his entire property [to his son Henry W. Langley and David P. Hibard] [2] in trust for the benefit of all his creditors; that this assignment was filed in the probate court of Gallia county, and put on record on the said 25th of May, and an order made by the probate judge, for security by the assignees, pursuant to the statute of Ohio on that subject; [that at this date the indebtedness of the said Langley was nearly five hundred thousand dollars, while his property of every kind did not exceed in value one hundred and seventy-five thousand dollars;] [2] that the assignees took possession of the property, and were proceeding to administer the same; and that on the 17th of July, the said Perry filed his petition in bankruptcy, embracing a prayer for an order restraining the assignee from

___

[2] [From 1 Am. Law T. Rep. Bankr. 34.]

any further interference with the property of Langley under said assignment; which prayer was granted by this court; and the assignees have suspended all further proceedings, awaiting the judgment of the court upon the question whether the act of bankruptcy charged in the petition was or was not in violation of the bankrupt law.

Mr. Nash and T. D. Lincoln, for petitioning creditor.

Mr. Coffin, for Langley.

LEAVITT, District Judge. The grounds of opposition to a decree of bankruptcy against Langley, comprehensively stated, are: First. That the assignment by him on the 25th day of May, was not an act of bankruptcy within the purview of the statute. Second. If an act of bankruptcy, the petitioning creditor, Perry, is estopped from urging or relying upon it, by reason of his implied assent to the assignment. Third. That at the date of the assignment (the 25th of May), the bankrupt act of the 2d of March 1867, was not in force, except for a special and limited purpose; and that the probate court of Gallia county, having rightfully obtained jurisdiction of the assignment under the statute of Ohio, on the 25th of May, and prior to the bankrupt act taking full effect, is entitled to retain it; and that the assignees are fully empowered to act under it, and execute its provisions, irrespective of the bankrupt act.

The first question, therefore, is, whether the assignment by Langley is an act of bankruptcy within the meaning of the statute, upon the hypothesis that the law was then in force, as applicable to the transactions involved in the case. It is claimed by the counsel for the petitioning creditor, that the assignment is void: First, as being executed by Langley, with an actual, fraudulent intent; second, that being for his entire property, it is presumptively fraudulent, under the operation of the bankrupt act, and therefore void; and third, that it is void as being with an intent to defeat and delay the operation of that act.

As to the first inquiry suggested, namely, whether the assignment was executed with a positive fraudulent intent, it is perhaps not important to inquire. The consideration of the other points stated, as to the legal effect of the assignment, under the provisions of the bankrupt act, will be decisive of the question before the court. If, subject to the imputation of legal, or constructive fraud, as in conflict with the act, the effect as to its validity is the same as if a fraud in fact were proved. The question involves the construction of the 39th section of the bankrupt law, in connection with the 35th, which defines what shall constitute acts of bankruptcy. And so far as the 39th section relates to the transfer, sale, or conveyance of property by one who is insolvent, it is declared to be an act of bankruptcy when made—First. "With in-

tent to delay, defraud, or hinder creditors." Second. "With intent to give a preference to one or more of his creditors, or to any person, or persons, who are, or may be liable for him, as indorsers, bail, sureties, or otherwise." Third. "With intent . . . . to defeat or delay the operation of this act."

First. Was the assignment by Langley intended to delay, defraud, or hinder a creditor, or creditors? The argument in favor of the legality and fairness of the assignment is, that being for the equal benefit of all his creditors, fraud cannot be presumed. Now it is true that an assignment or conveyance of all his property by a bankrupt, for the benefit of his creditors generally, unless with some one of the intents specified in the 39th section above noticed, is not declared to be an act of bankruptcy. Yet it is clear that such an assignment is in contravention of the spirit and policy of the bankrupt law, even when made in good faith. The intention of that law clearly was, that when a failing debtor was conscious of his inability to prosecute his business and pay his debts, he should at once subject his property to such a disposition as the bankrupt act has provided for. The property then becomes a sacred trust for the benefit of his creditors, who have a right to insist that it shall be administered, not according to the wish or preference of the insolvent, or in accordance with the insolvent laws of a state, but according to the provisions of the national bankrupt act. Indeed, it has been the settled doctrine in the United States, under any bankrupt law that has been passed, that when congress had called into exercise the clear constitutional grant of power to pass a uniform bankrupt law, the jurisdiction and legislation of the state as to the settlement of insolvent estates, was wholly suspended, to be resumed only when the national law ceased to be in force. This doctrine is not controverted, and it seems hardly necessary to refer to the cases which sustain it. In England the decisions have been uniform from the time of Lord Mansfield, that an assignment of all his property, by an insolvent debtor, for the benefit of all his creditors, was an act of bankruptcy, even where no actual fraud was intended. Deac. Bankr. 72, 73; Griff. Bankr. 107, 119, 120. The same doctrine has been settled in this country under the bankrupt act of August, 1841. McLean v. Meline [Case No. 8,890]; also, McLean v. Johnson [Id. 8,883]; Shawhan v. Wherritt, 7 How. [48 U. S.] 627. And it is understood from newspaper reports, that the same doctrine has been uniformly held by all the judges of the United States, before whom the question has been presented, under the recent act of the 2d of March, 1867. And if there was any doubt upon this question, under the 39th section of this law, it would seem to be removed by reference to a clause in the 35th section of the act. The 35th section does not define acts of bankruptcy, but declares what conveyances or transfers of property by a bankrupt shall be deemed void, and vest no title, as against the assignee in bankruptcy. This clause is in these words: "And if such (any) sale, assignment, transfer, or conveyance, is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud." This clause throws light upon the intention of the legislature in the enactment of the 39th section, and shows that any assignment or transfer of property by a failing debtor, not in the usual and ordinary course of business, is not only void, but evidence of fraud. Now it cannot be claimed that an assignment of all a debtor's property, for any purpose, is in the usual and ordinary line of business. Its effect is to put a stop to all business, by disposing of all the means by which it can be carried on. And this is one of the reasons given by the English courts why a general assignment of all a debtor's property is, per se, an act of bankruptcy.

Second. But whether the assignment is void, on the ground of presumptive fraud, it seems clear it is within the clause of the 39th section of the act, declaring any assignment, or transfer of property, by one in contemplation of bankruptcy, with intent "to delay, defraud, or hinder his creditors," shall be an act of bankruptcy. There would seem to be no doubt, from the facts in evidence, that this intent was in the mind of Langley in making this assignment. Indeed, he avers in his answer that his purpose was to prevent the petitioning creditor, Perry, from obtaining a priority over other creditors. This was an intent, within the meaning of the statute, to delay or hinder a creditor from obtaining his legal rights. Perry had sued Langley in the common pleas court of Gallia county for a debt of some $5,000, some time prior to the 25th of May, 1867, on which, by the rules of the court, he would be entitled to a judgment, and did obtain a judgment on the 1st of June, which, under the statute of Ohio, took effect, and was a lien, from the first day of the term, which was the 27th of May. There can be no doubt that Perry had a right to take all lawful means to secure his debt. No censure could attach to him for doing so, though it might give him an advantage over other creditors. All the creditors had the same right, and all who were thus vigilant would be entitled to all the legal benefits of their diligence. He was defeated and delayed in this, by the act of Langley in assigning all his property, and thus putting it beyond the reach of an execution. This clearly brings the assignment within the words of the statute as an act of bankruptcy. Langley avers in his answer, that one object in view, in making the assignment, was to prevent Perry from obtaining a preference over other creditors; and this, he assumes, was a meritorious purpose. But the law does not so view it. In its effect, it was delaying and hindering a creditor in a legal effort to secure his debt.

Third. But there is still another ground. on which the assignment must be adjudged to be an act of bankruptcy. It was clearly within the provision of the 39th section of the bankrupt act, declaring in substance that any conveyance, or transfer of property, with intent "to defeat or delay the operation of the act," to be an act of bankruptcy. The facts lead, with great certainty, to the conclusion that Langley must have intended to withdraw his property from the operation of the statute, and administer it through trustees of his own selection, and subject to his influence, and not by assignees selected by the creditors. If such was the design of Langley, even if honestly intended, the assignment, in its effect, was to defeat or delay the operation of the law. The bankrupt act was approved on the 2d of March, 1867, to take effect, as to the appointment of officers, and the preparation of rules of proceeding, from that day, and for other purposes, not until the 1st day of June following. The act, immediately after its approval, was published in all the leading newspapers of the country, and its provisions well known to the reading public. Langley, on the 25th of May, made the assignment in question. He had only to wait five days till the bankrupt act would be in full operation, and the way opened for filing his petition, and obtaining an adjudication in bankruptcy; and thus subjecting his property to distribution according to the just requirements of the act. Practically, the assignment delayed or defeated the operation of the law, and, as I think, was so intended by Langley. This was depriving the creditors of a legal right under the statute, and was clearly in contradiction of its spirit and letter. And the fact proved, that a few days after the assignment, Langley made a formal proposition to his creditors to compromise with them, by giving his promissory notes for forty cents on the dollar of his indebtedness, payable in instalments, within five years, may at least justify the suspicion, that the assignment was intended to facilitate such a compromise.

This leads me to the consideration of the second ground of objection to a decree of bankruptcy against Langley, namely, that the petitioning creditor, Perry, is estopped from urging or relying upon the assignment as an act of bankruptcy, for the reason that he assented to it, and cannot now in good faith, object to it. The well known doctrine of estoppel, is undoubtedly applicable in such a case, if the facts justify its application. It would clearly be in violation of a rule of good morals, as well as of law, that one should give his assent and approval to an act, and afterwards, for his own advantage, denounce the act as illegal and immoral. If the proof was that Perry had advised the making of the assignment, or after its execution, had expressly given his assent to it, as a creditor of Langley, he would have been precluded from insisting on it as an act of bankruptcy,

and could not have maintained a standing in this court, as a petitioning creditor. But there is no evidence placing him in this position. The only fact relied on is, that, after the assignment had been made, and assignees had been approved of by the probate judge of Gallia county, and a bond ordered and given by the assignees in the very inadequate sum of $15,000 (the assigned estate being in value about $175,000), Perry applied to the court to have the penalty increased, which was done by order of the court. This was clearly no approval of, or assent to, the assignment, and this exception to the petition must be overruled.

There yet remains for consideration the third objection to a decree of bankruptcy against Langley. This, as before stated, is in substance that, on the 25th day of May, 1867, the date of the assignment to the trustees, the bankrupt act, as to this transaction, was not in force; that the statute of Ohio, legalizing such assignments, was then operative; and the probate court, having rightfully acquired jurisdiction of the proceeding, had authority to retain it until it was ended; and that the jurisdiction of that court was not affected by the bankrupt act, which did not take full effect until the 1st of June. This point has been strenuously insisted on by the able counsel representing Langley, and I am free to confess that, as a first impression, it seemed plausible, if not unanswerable. Upon full reflection I am satisfied his argument is untenable, and I will state very briefly the reasons which have led to this conclusion. The 50th section of the act of March 2d, 1867, provides that the act as to the appointment of officers and the promulgation of rules and general orders, shall take effect from its approval, "provided, that no petition or other proceeding under this act shall be filed, received, or commenced, before the 1st day of June, A. D. 1867." The phraseology of this proviso is somewhat peculiar and significant. It does not declare that the statute, as to all matters not included in the preceding part of the section, shall not take effect till the 1st day of June, but merely that no proceedings shall be instituted under the act before that date. Its effect, therefore, is, by a fair construction, that while it suspends the right to proceed until the day named, it was the intention of the law-makers that as to the body of its provisions, it should take effect from its passage. If this were not the intention, why provide specially that no petition should be filed, or other proceeding had before the 1st of June? If it had been intended to postpone the operation of the entire act, except for the specific purpose mentioned in the beginning of the section, until the day named, it may be pertinently asked why it was not so expressed in clear terms? Not being so expressed, and the words used not admitting of such a construction, the conclusion is irresistible that it was not intended that the main provisions of

the act should be a dead letter until the 1st of June. On the contrary, it would seem to be clear that it was intended that these should be operative from the day the act was approved. The reason for the postponement of the law, as to proceedings under it, is well known. The law had made it the duty of the supreme court to prescribe orders and rules in bankruptcy; and these, from the pressure of other duties, could not be prepared before the 1st of June. For the purpose of insuring uniformity in the proceedings, it became necessary to suspend the right of petitioning until that day; but, for all other purposes, it was operative from its passage. And it is most obvious that any other construction of the section referred to, would have had a very decided effect in defeating the object of the statute. If all transactions occurring prior to the 1st of June, though plainly in conflict with the provisions of the bankrupt act, and involving gross frauds, were withdrawn from its operation, and virtually legalized, great facilities would have been afforded for the evasion of the salutary restrictions and prohibitions of the statute. And it can hardly be imputed to congress that such a result could have been intended. But, aside from the 50th section of the act, there are other evidences that it was intended the statute should take effect, in its main provisions, from its passage. In the beginning of the 39th section it is provided "that any person residing and owing debts as aforesaid, who, after the passage of this act," shall commit any of the numerous acts of bankruptcy specified in the section, may be proceeded against in bankruptcy. The words are not, after this act shall take effect, but after the passage of the act, which means plainly, after the 2d of March, the date of the approval of the act. And this is not within the category of retroactive laws, as its operation is upon future transactions, and not those that are past.

In addition to this, light is cast upon the question under review by the 35th section of the statute. The purpose of this section is to point out under what circumstances conveyances and transfers of property, by one in contemplation of bankruptcy, shall be deemed fraudulent and void; and it prescribes the duties and powers of assignees in bankruptcy, in proceedings to set aside such conveyances and transfers, and for the recovery of property thus fraudulently sold, or disposed of. In the beginning of the section it is provided "that if any person being insolvent, or in contemplation of insolvency, within four months before the filing of the petition, by or against him, shall dispose of his property in the way specified, his acts shall be fraudulent and void, and the property disposed of may be recovered by his assignee in bankruptcy." Here, it will be observed, the limitation as to time is, four months prior to the filing of the petition. And any act within the purview of the section, committed within that time, is declared

to be fraudulent and void. Now, in this case, the assignment by Langley was on the 25th of May, and the petition in bankruptcy was filed the 17th of July following; and, as less than four months intervened, the assignment is within the operation of the 35th section. If, therefore, there was a doubt as to the true construction of the 50th section of the act, the reference to the 35th and 39th sections shows conclusively that the statute extends to transactions occurring prior to the 1st of June, 1867, and that they are proper subjects of jurisdiction under the bankrupt law. Now it is not denied by counsel that the bankrupt act of the 2d of March, 1867, so far as it defines what are acts of bankruptcy, and points out the mode of proceedings, supersedes all insolvent laws of the state. I have before referred to this well settled doctrine, and will only cite some of the authorities by which it is sustained: Ex parte Eames [Case No. 4,237]; Judd v. Ives, 4 Metc. [Mass.] 401; [Sturges v. Crowninshield] 4 Wheat. [17 U. S.] 195; [Houston v. Moore] 5 Wheat. [18 U. S.] 22; and also a very learned opinion by Judge Williams, of the district court of Allegheny county, Pa., in Com. v. O'Hara, 6 Am. Law Reg. (N. S.) 705; In re Hill [Case No. 6,481]. It results conclusively, that if the provisions of the bankrupt act were in force on the 25th of May, 1867, the date of the assignment, and that assignment was within the scope and intent of the law, and as an act of bankruptcy, altogether null and void, the probate court of Gallia county had no jurisdiction of the assignment, and the acts of that court in regard to it are wholly invalid. And no argument is needed to prove that no court can legitimately obtain jurisdiction by any act against law, and inherently void. The argument, therefore, that the Gallia county probate court, having obtained jurisdiction under the state law, is entitled to retain it to the end of the proceeding, has no force or application. That court had no authority to act in the matter of the assignment, as the jurisdiction of this court was paramount and exclusive. There is, therefore, no conflict of jurisdiction.

A decree in bankruptcy must be entered; and the usual order for a warrant is directed to be made. As a matter of course, the motion to dissolve the injunction heretofore granted, is overruled.

[NOTE. Subsequently a bill in equity was filed by Langley against Perry to revise and reverse the adjudication of bankruptcy entered in this case. Demurrers to this bill were overruled, and the judgment of this court reversed. Case No. 8,067.]