## Carow *vs.* Kelly, Sheriff, &c.

A chattel mortgage can be avoided for usury, by a judgment and execution creditor of the mortgagor.

A person who, like an execution creditor, asserts a lien upon mortgaged property, is not a stranger, within the meaning of the rule that the defense of usury is a personal one, and cannot be pleaded by one having neither privity of estate nor of blood with the borrower—that is to say, by a mere stranger.

THIS action was brought by the plaintiff as mortgagee of a lathe and other chattels, against the defendant as sheriff, for unlawfully taking and detaining the same. The articles in question were in the possession of the plaintiff as mortgagee, and were taken and sold by the defendant under executions on judgments against the mortgagors. For this taking the action was brought. The defendant justified his taking under the executions and judgment. The issues were tried before Mullin, J., and a jury. The question on the trial was as to the validity of the plaintiff's chattel mortgage. The defendant claimed that it was usurious, and made and delivered in fraud of the creditors of the mortgagors.

The facts, as shown by the evidence, are as follows: The firm of Sutherland, Tyler & Stoddard was organized in July, 1864, and was composed of James Sutherland, Edmund L. Tyler and Thomas Stoddard. Their business was iron forging, and was carried on at the corner of avenue C and 17th street, in the city of New York. This business had been carried on previous to that date by a firm composed of said Sutherland and Stoddard, and two others; but not having means enough to carry on the business, they applied to the plaintiff for a loan of money, and he proposed to lend the concern $50,000, provided his brother-in-law, Daniel L. Tyler, was taken into the concern, and it bought the lots on which the forge stood, and the plaintiff was paid a bonus of $4000 per year for said loan, in addition to the interest. Accordingly, the

said Tyler bought out the two other partners of the old firm, and the firm of Sutherland, Tyler & Stoddard was organized. A negotiation was opened for the purchase of the property where the forge stood, but the title not being satisfactory, ten vacant lots on avenue B were purchased for $26,000. This money was advanced by the plaintiff, and the transaction, in form, was that the deed was taken in the plaintiff's name, with the understanding that he would convey the same to Sutherland, Tyler & Stoddard, upon being paid the said $26,000; and a lease was entered into, whereby the said firm agreed to pay the plaintiff an annual rent of $7500 for the lots. They were vacant lots, and of no use to any one, in their condition at that time. A written agreement was entered into, dated July 1, 1864, between the plaintiff, of the first part, and Sutherland, Tyler & Stoddard, of the second part, reciting that whereas the plaintiff had leased said ten lots to Sutherland, Tyler & Stoddard, for the annual rent of $7500, the plaintiff agreed, in consideration thereof, (so long as said rent should be punctually paid, not extending beyond May 1, 1864,) to advance for the purpose of said business the sum of $23,000, or such portion thereof as might be needed, and provide sufficient down town office accommodation for the purposes of said business; and that the said plaintiff should manage and superintend the monetary and commercial part of such business; and said Sutherland, Tyler & Stoddard agreed to execute a mortgage to the plaintiff upon all their buildings, machinery and property, as collateral security for the due performance of the terms and conditions of said lease. A chattel mortgage was executed by Sutherland, Tyler & Stoddard, in pursuance of said agreement, dated July 1, 1864. This mortgage was not filed until May 31, 1865, and the lease was never recorded.

At the time the plaintiff promised to loan $50,000 to Sutherland, Tyler & Stoddard, they agreed to pay him

therefor the interest, and a bonus of $4000 a year, and the $7500 mentioned in the lease, as the annual rent of said ten lots was made, in pursuance of such agreement, as follows:

| | |
|---|---:|
| Interest on $50,000, ($27,000 for lots, and $23,000 to be advanced,) per year, . . . . . . . . | $3,500 |
| Bonus for use of money, . . . . . . . . . . | 4,000 |
| Total, . . . . . . . . . . . . . . | $7,500 |

This arrangement of the lease the defendant claimed, was a blind to cover up the $4000 bonus. The plaintiff did not attend to the financial business of the firm, nor was any down town office furnished or needed. In March 1865, the said firm being in need of more money, the partners, Stoddard & Tyler, agreed to furnish $3000 and $4000, respectively, and Mr. Tyler did furnish $3600 and Mr. Stoddard $3000. In June, 1865, the firm were sued, and they discovered that they could not go on. After the trouble commenced, it was proposed to make a mortgage for all they owed the plaintiff, but Sutherland and Stoddard objected, on the ground that other creditors ought to have a chance as well as the plaintiff. Stoddard finally signed it, and told Sutherland, in the presence of the plaintiff, that unless they "signed the mortgage, Mr. Tyler could confess a judgment, and it would take the whole thing away." Sutherland refused to sign the mortgage, unless there was a general assignment for the benefit of all the creditors; and an arrangement was finally made, that a general assignment should be executed. The plaintiff was present, either in person or by his attorney, Mr. Campbell, during the several meetings and negotiations that resulted in the execution of the assignment and mortgage. The mortgage was executed June 2, 1865, late in the afternoon, and the assignment was executed the next morning. They were claimed to be one transaction. It was all arranged about the same time. Prior to and at

the time the mortgage and assignment were executed, there was talk of forming a stock company, with the plaintiff for president, and the mortgage was executed by the mortgagors with the intention of putting off creditors and delaying them until the mortgagors could get this stock company up and settle with their creditors.

The charge of the court submitted to the jury the proposition, that if they were satisfied from the evidence that the object of the assignment was to enable those two persons (members of the firm) who would advance money to the firm, to secure either their friends this money or themselves, or for their benefit, which was not in truth a debt against the firm, it was evidence of a corrupt intent on the part of the assignors, which should vitiate their assignment, provided they were satisfied that was the intent of the transaction, otherwise not; that they would see it became all important to determine whether the plaintiff was in any way a party to, or cognizant of, this transaction, so that his mortgage became connected with the assignment. That the mere knowledge of the transaction by the plaintiff, that they intended to make an assignment at the same time, would not bind him; but it must be so connected as that the whole scheme would fail unless the whole scheme was carried out; that is, that the mortgage would fail unless the scheme in regard to the assignment was carried out. That if they found that the transaction of the lease &c. was a cover, and that the object of the parties was to get an usurious rate of interest, then the mortgage was void as against those creditors whose executions the sheriff held at the time the action was commenced.

To the charge as given, and to the refusal to charge, the plaintiff excepted. Some exceptions were also taken to the admission or exclusion of evidence.

The jury found a verdict for the defendant; whereupon a motion was made for new trial on the minutes, which

Carow *v.* Kelly.

was denied, and judgment having been perfected, the plaintiff appealed from the order denying a new trial, and from the judgment.

*E. P. Wheeler,* for the appellant.

I. The judge's charge on the subject of usury was erroneous. The evidence as to usury was admitted against the plaintiff's objection and exception. The mortgage was not void as against judgment creditors. After the original loan, the borrowers and lender met, and stated the account between them, and credit was given to the borrowers for certain sums paid by them on account. The borrowers gave a mortgage for the amount shown by this accounting to be due. No person claiming under them can impeach this mortgage for usury in the original loan. This was expressly decided in *Bullard* v. *Raynor*, (30 *N. Y.* 197.) And in *Murray* v. *Judson*, (9 *N. Y.* 73,) it was held that a judgment creditor could not impeach an assignment because it preferred a usurious debt.

II. The original loan was not to the mortgagors, but to Sutherland & Co., their predecessors in business. The new firm assumed all the liabilities of the original borrowers, including the debt in question. When a grant of land is made expressly subject to a usurious mortgage, the grantees cannot set up the defense of usury, as against the mortgage. (*Hartley* v. *Harrison*, 24 *N. Y.* 170. *De Wolf* v. *Johnson*, 10 *Wheat.* 367, 393.) The same principle applies where the grantees assume the debt, and give a new mortgage to secure it. This is an affirmance of the first loan; the mortgage is valid, and no person claiming under the mortgagors can set up usury in the original loan. (*Sands* v. *Church*, 6 *N. Y.* 347.)

III. The grantee of land or chattels cannot avail himself of the defense of usury in a prior mortgage. (*Ohio and Miss. R. R.* v. *Kasson*, 37 *N. Y.* 218. *Chamberlain* v. *Dempsey*, 36 *id.* 144. *Mechanics' Bank* v. *Edwards*, 1 *Barb.*

271. *Affirmed G. T.*, 1*st Dist.*, 2 *id.* 545.) It was held otherwise in *Cole* v. *Savage*, (10 *Paige*, 583,) and *Dix* v. *Van Wyck*, (2 *Hill*, 522;) but these cases were overruled by the court of errors in *Post* v. *Bank of Utica*, (7 *id.* 391,) which was followed by the Court of Appeals in *Rexford* v. *Widger*, (2 *Comst.* 131,) and *Schermerhorn* v. *Talman*, (14 *N. Y.* 93.)

IV. The judgment creditor can claim no better position than a *bona fide* purchaser for value. (*Post* v. *Bank of Utica*, 7 *Hill*, 391.)

V. The exception to the refusal to charge, "that unless Carow participated in any fraudulent intention on the part of Sutherland, Tyler & Stoddard to hinder and delay creditors, the mortgage is not to be deemed fraudulent for that reason," is well taken. The charge, as given, was: "If this transaction (the making of the assignment) was known to the plaintiff, if he was cognizant of it or assenting to this transaction, then he is charged with the result; it does connect his mortgage with that assignment, and he must take the consequence." In other words, the judge charged that if Sutherland, Tyler & Stoddard made a fraudulent assignment, and Carow knew they were about to make an assignment, but did not know the fraud, nor participate in it, his mortgage is void. This is not the law; and the exceptions referred to are well taken; so is that to the admission of the assignment in evidence. A fraudulent intent on the part of the mortgagee is just as essential as a fraudulent intent on the part of the mortgagor, if there is a consideration for the mortgage. (*Waterbury* v. *Sturtevant*, 18 *Wend.* 353. *Carpenter* v. *Muren*, 42 *Barb.* 300.) The only fraud in the assignment that was alleged was, that it preferred as partnership creditors Weston and Gray, and Daniel Tyler, who had lent money to Captain Stoddard and E. L. Tyler. Carow was not one of these persons. The fraud alleged does not affect him or his mortgage, and his presence at the assignment, and knowledge of its

Carow *v.* Kelly.

terms, do not make him a party to any fraud in it. (*Putnam* v. *Hubbel*, 42 *N. Y.* 106.) There cannot be any pretense of any actual fraud in the mortgage. No one had a better right to be preferred by the firm than Carow, for he had lent them money to a large amount, and he had a mortgage for it, which was valid as to the firm, but which, through mistake, had not been filed. They were bound to give him a new one, on every principle. It cannot justly be said that the creditors were prejudiced by the not filing. At that time preferential assignments were lawful and common, and it was equally common, and considered almost a duty, to prefer those who had lent money to the person making the assignment. The mortgagors practically turned over the property covered by the mortgage in payment of their debt. Carow took possession under it immediately. A preëxisting debt is a sufficient consideration for a mortgage, as against other creditors. (*Stover* v. *Eycleshimer*, 3 *Keyes*, 620. *Seymour* v. *Wilson*, 19 *N. Y.* 417.)

VI. The plaintiff, being examined as a witness, was asked: " Had you any other intention or object in taking this mortgage, except to secure your debt?" The question was excluded, and the plaintiff excepted. The exception was well taken. The question was not objected to as leading. Had it been, the form could easily have been modified. The intention of the plaintiff certainly was material on the question of fraud. (*See cases cited under 5th point.*)

A similar question was held proper in *Seymour* v. *Wilson*, 14 *N. Y.* 567,) and was allowed by the judge on this trial. So also, *Forbes* v. *Waller*, (25 *N. Y.* 430 ;) *Thurston* v. *Cornell*, (38 *N. Y.* 281.)

*A. J. Vanderpoel*, for the respondent.

I. The plaintiff's mortgage was void for usury. In it was included and sought to be secured the $4000 bonus per annum, which the plaintiff exacted for the use of

moneys loaned to the mortgagors, over and above the legal interest on said moneys. This was done under cover of paying rent for the vacant lots and for the plaintiff's services, &c., and $625 monthly ($7500 per annum,) was regularly credited to the plaintiff therefor, which went into the consideration of the mortgage. The court charged the jury that if they should find that this agreement "was a cover, and that the object of the parties was to get a usurious rate of interest, then the mortgage is void as against these creditors whose executions the sheriff held at the time this action was commenced." No exception was taken to this charge, and the court, at the request of the plaintiff, further charged, "that there was nothing which makes it a usurious agreement *per se ;* that it was perfectly competent for the parties to make an agreement with the plaintiff for compensation for his services, *if made in good faith.*" The question of usury was thus fairly submitted to the jury; they, by their verdict, pronounced the mortgage usurious and void, and the evidence abundantly sustains the verdict. (*Dix* v. *Van Wyck,* 2 *Hill,* 522. *Thompson* v. *Van Vechten,* 27 *N. Y.* 568. *Schroeppel* v. *Corning,* 5 *Denio,* 236. *Mason* v. *Lord,* 40 *N. Y.* 476. *Post* v. *Dart,* 8 *Paige,* 639. *Shufelt* v. *Shufelt,* 9 *id.* 137. *Brooks* v. *Avery,* 4 *N. Y.* 225. *Bullard* v. *Raynor,* 30 *id.* 197, 203.)

II. The facts fully justified the conclusion of the jury that the plaintiff's mortgage and the general assignment were parts of a single transaction, and so connected that fraud in the assignment tainted the mortgage. 1. Sutherland testified, "the assignment was drawn several days before the chattel mortgage was executed; both were one transaction; it was all arranged about the same time." Sutherland and Stoddard refused to sign a mortgage unless the assignment was made. The learned judge instructed the jury that if the plaintiff was cognizant of or assented to this he is charged with the result; that it connects the mortgage with the assignment; but if he was

neither knowing or assenting to it, then he is not charge-
able with it. "His mere knowledge of the transaction,
that they intended to make an assignment at the same time
would not bind the plaintiff; but it must be so connected
that the whole scheme would fail unless the scheme in re-
gard to the assignment was carried out. You will determine
this question, and you will require, before you find these
results, evidence which satisfies your own minds, as sens-
ible men, that that is the fair and reasonable inference
from the evidence in this case." The jury by their ver-
dict found that the two instruments were thus connected,
and the evidence abundantly justifies such finding.

III. The mortgage was fraudulent and void as against
the executions, because made with intent to hinder, delay
and defraud creditors. 1. The intention of the mortga-
gors, in making the mortgage and assignment, was to put
off and delay their creditors until they could get up a
stock company. ( *Work* v. *Ellis*, 50 *Barb*. 512.)

IV. The mortgage and assignment were fraudulent and
void, because the assignment preferred as a firm debt the
$3600 which the partner Tyler had contributed to the co-
partnership capital in March, 1865, and also the $2000 which
the partner Stoddard had contributed at the same time.
The books were fraudulently changed to make these sums
appear as debts due to Daniel Tyler and Weston & Gray,
and the amounts were preferred as indebtedness to them.
These debts were false, and the preference was in fact for
the benefit of the assignors Tyler & Stoddard themselves.
This avoided the assignment. ( *Elias* v. *Farly*, 5 *Abb. N. S.*
39.) Even if the partners had individually borrowed said
sums respectively from the parties named, the assignment
was void, because it thus appropriated partnership prop-
erty to pay individual debts. ( *Wilson* v. *Robertson*, 21
*N. Y.* 587.)

V. The judge very properly declined to charge "that
unless Carow participated in any fraudulent intention on

the part of Sutherland, Tyler & Stoddard, to hinder and delay creditors, the mortgage was not to be deemed fraudulent for that reason." 1. The mortgage and assignment were portions of the same transaction, so that if the assignment was fraudulent and void the mortgage was void also. It has never been held necessary to show fraud on the part of any but the assignors, in order to avoid a general assignment. (*Griffin* v. *Marquardt,* 17 *N. Y.* 28.) 2. There being no present consideration for the mortgage, it was not necessary to show a fraudulent intent on the part of the mortgagee. (*Wood* v. *Hunt,* 38 *Barb.* 302. *Newman* v. *Cordell,* 43 *id.* 448.) 3. The judge had previously charged " that if the plaintiff had advanced money at the time and took the mortgage as security, then, although the firm may have been fraudulent, if he (Carow) was not a party or cognizant of it, or assenting to it, it would not affect his mortgage. But if it was given for an old debt, if you are satisfied that it was, in truth, fraudulent on their part, and that he was cognizant of this assignment, connected with it, he is charged with that, because he had not a *bona fide* mortgage for value, paid at the time the mortgage was given, and he took it subject to all the infirmities which exist in the mortgage."

To this charge no exception was taken by the plaintiff, and it was a clear and proper statement of the law, as applicable to the facts.

VI. The question put by the defendant's counsel to the witness, Stoddard, as to the intention of the mortgagors in executing the mortgage and assignment, was proper. (*McKown* v. *Hunter,* 30 *N. Y.* 625. *Griffin* v *Marquardt,* 21 *id.* 121.)

VII. The leading question put to the defendant by his own counsel, on direct examination, as to whether he had any other intention in taking the mortgage except to secure his debt, was properly excluded. The statute says nothing about the intent of the vendee or mortgagee.

Carow v. Kelly.

The intent of the vendor or mortgagor is only to be looked at; and then the second question arises, under some circumstances, whether the vendee or mortgagee had notice of that intent. In this case the plaintiff only took his mortgage to secure an alleged old debt again. The jury having found that the mortgage and assignment were parts of the same transaction, the plaintiff's intention became immaterial.

*By the Court*, CARDOZO, J. This case was reserved, on the argument, merely upon the point whether the judge erred in holding that the mortgage, under which the plaintiff claimed, could be avoided for usury, by a judgment and execution creditor. The precise point was held in conformity with the ruling below, in *Dix* v. *Van Wyck*, (2 *Hill*, 522,) and that case was recognized and cited as law by the Court of Appeals in the recent case of *Mason* v. *Lord*, (40 *N. Y.* 488.) I think it unnecessary, therefore, to review the authorities relied upon by the appellant's counsel. They do not conflict with the decision in *Dix* v. *Van Wyck*, but are simply applications of the well recognized rule that the defense of usury is a personal one, and cannot be pleaded by one having neither privity of estate nor of blood with the borrower—that is to say, by a mere stranger. But a person who, like an execution creditor, asserts a lien upon the property, is not a stranger, within the meaning of the rule. (*Thompson* v. *Van Vechten*, 27 *N. Y.* 568. *Dix* v. *Van Wyck, supra.*)

The judgment should be affirmed.

FIRST DEPARTMENT, GENERAL TERM, at New York, April 4, 1871. *Ingraham*, P. J., *Cardozo* and *Geo. G. Barnard*, Justice.]