## Case No. 17,706.

### In re WILLIAMS.

### [14 N. B. R. 132.] [1]

District Court, E. D. Michigan.     March 27, 1876.

BANKRUPTCY—ATTACHING CREDITORS—PREFERRED
CREDITORS—ESTOPPEL.

1. An attaching creditor may intervene to contest an adjudication upon the merits. as well as to claim the court has no jurisdiction of the case.

[Cited in Re Austin, Case No. 662; Re Jonas, Id. 7,442.]

[Cited in Risser v. Hoyt, 53 Mich. 198, 18 N. W. 618.]

2. Creditors who have obtained a preference by a bill of sale from the debtor. are estopped to set up the execution of the same as an act of bankruptcy.

[Cited in Re Kraft. 3 Fed. 893; Judson v. The Courier Co., 8 Fed. 426.]

3. Creditors who have taken possession of the entire property of a debtor. under a general assignment, or bill of sale, intended to prefer them, cannot set up the non-payment of a note as an act of bankruptcy.

4. An attaching creditor. who intervenes to oppose an adjudication. may take advantage of any defense available to the debtor.

[5. Cited in Re Sawyer, Case No. 12,394, to the point that one who has become a party to, or assented to, an act, cannot afterwards, for his own advantage, denounce the act as illegal.]

On petition of William W. Crapo, attaching creditor, for leave to intervene and contest the bankruptcy proceedings.

A petition was filed against Elias G. Williams on the 13th day of December, 1875, by a number of creditors, praying for his adjudication as a bankrupt, and setting forth, as acts of bankruptcy, the transfer of his property, by a bill of sale. to the Citizens' National Bank of Flint, and also the non-payment and suspension of commercial paper. On January 3, William W. Crapo. an attaching creditor, filed his petition, setting forth that on the 16th of October he took out a writ of attachment from the state court. and seized certain property of Williams; that upon the same day a bill of sale was made by Williams to the Citizens' National Bank, and placed on file in the city clerk's office. but not until after the property covered by the bill of sale had been seized upon petitioner's attachment. The bill of sale covers all the property of Williams liable to execution. That two of the petitioning creditors were officers of the bank; that at the time the bill of sale was given. they and two others transferred their claims to the bank, and that the bill of sale was taken by the bank partly to secure the same; that at the time of giving the said bill of sale, and also upon the day the creditors' petition was filed, Williams was indebted in the amount of over forty-eight thousand dollars: that four hundred and thirty-five thousand feet of lumber in Williams' possession was claimed by other parties. who replevied it

1 [Reprinted by permission.]

three days after the petitioner's attachment was taken out; and the day following the replevin, the bank, claiming this same lumber under its bill of sale, itself replevied the lumber back again; that petitioner obtained judgment, on the 21st of December, for two thousand two hundred and forty-nine dollars and thirteen cents, and immediately levied his execution upon the property, by virtue of which he now holds it. Petitioner further alleges that five of the creditors have undertaken to defeat his claim under the attachment, by asserting their lien under the bill of sale, and have combined with Williams to procure an adjudication, and thereby work a dissolution of his attachment, and that the creditors' petition was filed collusively and for that purpose. He further claims, and it is admitted, that, excluding these five petitioners. there are not the requisite number of creditors named therein; that these five, having procured or assented to the taking of the bill of sale. are estopped from setting up the assignment as an act of bankruptcy, and, holding their lien, are not proper petitioning creditors. He further sets up that the bank and one petitioner procured the bill of sale. and the transfer from Williams to the bank. of all his property, money credits, and effects. to secure the payment of the note set out in the creditors' petition. the non-payment of which is alleged as an act of bankruptcy and that. by the taking of the bill of sale by the bank, Williams was deprived of the means of paying the note, and the bank and Hamilton thereby obtained the means of said Williams with which payment of said note could have been made within the forty days. He therefore claims that the petitioning creditors have no right to set up the non-payment of the note as an act of bankruptcy. and that said non-payment is not an act of bankruptcy. He further states that he has acquired a lien, by his attachment upon the property of the bankrupt, which will be destroyed by an adjudication. and prays that he may be let in to contest the proceedings.

Griffin & Dickinson. for petitioning creditors.

M. E. Crofoot and Alfred Russell, for intervening creditors.

BROWN, District Judge. It has already been held by this court. in the case of Bergeron [Case No. 1,342]. that the attaching creditor has the right to intervene and contest the jurisdictional allegation of the petitioner, as to the number and amount of creditors. All the cases up to that time are cited in this opinion. Since then, however, the same question has been similarly decided by the district judge of the Eastern district of Wisconsin. In re Hatje [Id. 6,215]. It is claimed. however. by the petitioning creditors in this case that. although he may have the right to intervene to object to the juris-

diction, he cannot be permitted to contest the case upon its merits; in other words, he cannot intervene for the purpose of showing that no act of bankruptcy has been committed, and it is suggested that all of the cases, where an intervening creditor was permitted to appear, turned upon the alleged want of jurisdictional allegation in the court, and that no authority is found for the position that he may intervene to put in issue the act of bankruptcy. On the contrary, however, in the case of Brewster v. Shelton, 24 Conn. 140, the attaching creditor was permitted to come in and claim that the proceedings were collusive, as to him—precisely what is claimed in this case; and in Re Mendelsohn [Case No. 9,420]. In the Case of Jack [Id. 7,119], the attaching creditor was permitted to contest the question of merits. No distinction in principle is perceived; the attaching creditor has an interest to protect. By the adjudication his attachment is ipso facto dissolved, and he has a right to inquire whether an act of bankruptcy has in fact been committed, as well as whether the court has jurisdiction to entertain the petition. Underlying all the discussion upon this subject is the general principle of law, that no man shall be deprived of his property without the opportunity of being heard. An assumption of this kind is at war with our whole system of jurisprudence.

The question next arises whether the petitioning creditors are not estopped to claim the bill of sale set forth in the petition as a preference, to be an act of bankruptcy. The intervening petition sets forth (and for the purposes of this motion, it must be taken as true), that four of the petitioning creditors were officers of the bank to which the bill of sale was made at the time the same was executed; that they and two others of the petitioners transferred their claims set up in the petition to the bank; that said claims were held by the bank at the time the bill of sale was taken and constituted a part of the claim named in the bill of sale, which it was taken and intended to secure, and that said security was procured with the consent and at the instance of these creditors, and that they were not entitled to be represented in the petition. It further sets forth that five of these creditors, acting for themselves and the bank, have undertaken to defeat petitioner's claim, under his attachment, by asserting their lien under the bill of sale, and have combined with Williams to procure an adjudication and thereby to work a dissolution of his attachment lien. The law is as well settled in bankruptcy as in equity, that the party who has become a party to, assented or taken benefit from a fraudulent conveyance, is estopped thereby to claim the same as a fraud or an act of bankruptcy. A party cannot thus take advantage of his own wrong, as observed by Judge Leavitt in Re Langley [Case No. 11,006]: "The well known doctrine of estoppel is undoubtedly applicable in such a case, if the facts justify its application. It would be clear-

ly in violation of a rule of good morals as well as of law, that one should give his assent and approval to an act, and afterwards, for his own advantage, denounce the act as illegal and immoral." In the Case of Schuyler [Id. 12,494], creditors who had assented to a transfer from a common law assignee for the benefit of creditors to another assignee, were held estopped from questioning the original assignment. See, also, Spicer v. Ward [Id. 13,241]; In re Massachusetts Brick Co. [Id. 9,259]; Bamford v. Baron, 2 Term R. 594, note; Hicks v. Burfitt, 4 Camp. 235, note; Ex parte Kilner, Buck, 104; Ex parte Cawkwell, 19 Ves. 233; Back v. Gooch, 1 Holt, N. P. 13. I think it entirely clear in this case that the creditors whose claims are secured by this bill of sale would be estopped to claim its execution as an act of bankruptcy.

The only other act charged is the suspension and non-payment of a note, dated July 15, 1875, payable sixty days after date to the order of William Hamilton. The intervening petition further sets up that the bank and the petitioner Hamilton procured a transfer from Williams to the bank, of all his property, money, credits and effects to secure the payment of this note, and that by such transfer Williams was deprived of the means of paying the same, and the bank and Hamilton thereby obtained the means with which payment of such note could have been made within the forty days, and therefore that the petitioning creditors have no right to set up the non-payment of the note as an act of bankruptcy; though it was clear that Williams could not, as against creditors not assenting thereto, set up the assignment of his property for the benefit of creditors as an excuse for non-payment of his commercial paper, still I think the creditors who have procured such assignment, and thereby taken the means by which Williams might reasonably be expected to pay the note, are as much estopped to claim the non-payment of the note as an act of bankruptcy as they are to claim the assignment itself to be such. But it is insisted, that, granting that the debtor might claim these estoppels, the same defense cannot be made available in the hands of the intervening petitioner. The general rule is unquestioned, that only parties to a deed and those in privity with them, can be bound by it, or take advantage of the estoppel created by the instrument. Bigelow, Estop. 269. It only remains to inquire whether Crapo is a privy to the estate of the debtor within the meaning of the law. The term "privity" (Greenl. § 189) "denotes mutual or successive relationship to the same acts of property." Such relationship may be cast upon the privy by the voluntary act of the party, or by the act of the privy himself, proceeding in hostility to the party. Privies in estate exist where there is a mutual or successive relationship to the right of property, not occasioned by descent or by act of law. Freem. Judgm. § 162. Privies in estate are simply distinguished from strangers, and the manner in which the party be-

came a privy, so long as the relationship exists, is of no moment. In the case of Parker v. Crittenden, 37 Conn. 148, the plaintiff bought a hack in the possession of a third person as belonging to him. The real owner was present and assented to the sale. Subsequently it was attached as his, in the hands of the plaintiff, who now brought replevin. The court held him entitled to recover. The defendants, it was remarked, by claiming through the owner under attachment, were privies in the estate with him, and bound by the same estoppel. See, also, Bigelow, Estop. p. 493, etc. Similar questions have frequently arisen under the usury laws of the state of New York. In the case of Dix v. Van Wyck, 2 Hill, 522, it was held that, although a deed or contract cannot be avoided for usury by a mere stranger to the transaction, a judgment creditor, by selling the property of his debtor on execution, might place himself in the situation of a privy, and contest the validity of any prior lien affected by usury. The case was replevin against a sheriff for goods taken on execution, the plaintiff claiming under a prior mortgage, executed by the judgment debtor; and it was held that the sheriff might show the mortgage usurious as a defence to the action. The court observes that "the purchaser under a judgment and execution, is an assignee by operation of law, and so stands in legal privity with the judgment debtor. We have not been referred to any case, nor have we met with one which denies that an execution creditor may seize and sell the property of his debtor, and thus try the validity of any prior ·charge or incumbrance on the ground of usury." Similar views were expressed by the chancellor in the case of Post v. Dart, 8 Paige, 640, where it is observed that "a usurious mortgage is void, not only as to the mortgagor, but as to all other persons who succeed to his rights in the mortgaged premises, either by the operation of law or otherwise. A judgment creditor, therefore, whose mortgage becomes a legal lien upon the whole interest of the mortgagor in such premises, may buy and sell and purchase under his judgment, obtain a perfect title to the land, and may then enjoy the same as fully as the judgment debtor might have done had he continued to be the owner." In Mason v. Lord, 40 N. Y. 476, it was held an assignment of a lease absolute on its face but in fact given as security for a usurious loan might, in the hands of a purchaser of such lease from the usurious assignee, with notice that the original assignment was security for a loan, although without notice of its usurious character, be avoided for usury by a judgment creditor of the original lessee. All those cases were reviewed in Carow v. Kelly, 59 Barb. 239, where it was held a chattel mortgage could be avoided for usury by a judgment or execution creditor of the mortgagor. The general doctrine was there asserted that a person who, like an execution creditor, asserts a lien upon mortgaged property, is not a stranger, within the

meaning of the rule; that the defence of usury is a personal one, and cannot be pleaded by one having neither privity of estate nor of blood with the borrower, that is to say, by a mere stranger. As the intervening petitioner claims title to the property in question by an attachment duly levied upon it, I think he stands in the relation of a privy and may take advantage of any defence available to the debtor, and his motion for leave to intervene is therefore granted. ·