### In re KRAFT and others, Bankrupts.

(District Court, S. D. New York. ———, 1880.,

1. BANKRUPTCY—DISCHARGE—ESTOPPEL.—The acceptance of a dividend under an unlawful assignment does not estop a creditor from objecting to the discharge of the assignor under subsequent proceedings in bankruptcy, where such creditor had no power to dissent from, repudiate, or avoid such assignment.

*Jos. S. Bosworth, Jr.,* for bankrupt.

*R. E. Prime,* for creditor.

CHOATE, D. J, In this case a rehearing has been granted upon the question of the discharge of the bankrupt Kraft, upon the suggestion that the court and counsel had entirely overlooked one point in the case, which might be decisive in his favor. The discharge was refused on the ground that the bankrupt had made a general assignment for the benefit of creditors about two years and seven months before he filed his petition. The point now made is that the opposing creditors received dividends under the voluntary assignment, and have thereby affirmed its validity, and are estopped to set it up as a fraudulent conveyance to prevent a discharge. There is some evidence upon which it is claimed that one of the two opposing creditors virtually assented to the assignment at or before the time it was executed. This was held not sufficient as showing their assent to it. The case cited upon this rehearing, and hereinafter referred to, might lead to a reconsideration of this question if it could affect the result. But as it is conceded that no such assent, otherwise than by the acceptance of a dividend, is shown against the other opposing creditor, it is unnecessary to consider further the effect of that evidence. The dividend was paid to the opposing creditors about 15 months after the execution of the assignment. Is this such a ratification of the assignment as precludes the creditor from opposing the discharge of the assignor in a subsequent bankruptcy, on the ground of his making the general assignment? Several cases are cited in

which creditors have been held to be estopped by their own consent to an act from alleging it against their debtor, either as proof of an act of bankruptcy on the question of his adjudication, or as a fraudulent conveyance upon the question of his discharge. It may be taken as settled that a creditor who assents to the making of an assignment or other conveyance, which, but for such assent, would be an act of bankruptcy or would preclude a discharge, cannot allege the same against the debtor for either purpose. The ground of the rule is that to allow him to do so would be inconsistent with good faith and fair dealing, encourage deceit, and put it within the power of creditors to entrap the debtor by inducing him to commit acts apparently fraudulent as to them, which they intend afterwards to repudiate to his disadvantage. To this extent the application of the principle of estoppel *in pais* clearly goes. *Johnson* v. *Rogers*, 15 N. B. R. 1; *In re Schuyler*, 2 N. B. R. 549; *In re Langley*, 1 N. B. R. 559, 565; *In re Williams*, 14 N. B. R. 132; *In re Massachusetts Brick Co.* 5 N. B. R. 408, 412. The limit of the rule, however, is plainly indicated by Judge Blatchford, in *In re Schuyler*, 2 N. B. R. 549, 551, where he says that the creditors are estopped from questioning the assignment "by reason of the fact that those creditors, while enjoying the free election of ratifying or repudiating the assignment, have chosen to ratify it." If, then, the creditor has done any act which amounts to a prior assent to the assignment, or if, having it in his power to dissent, repudiate, and avoid it, he fails to do so, he may be taken to have assented to it, and will be estopped to allege it against the debtor, as done against his rights and without his consent.

This, it seems to me, is the utmost extent to which the estoppel goes. If the creditor could make the assignment the ground for putting the debtor into bankruptcy, as he could down to the amendment of the bankrupt law in 1874, upon his petition alone, or as he can do under the English bankrupt law, then the failure to take this course may well be deemed an assent to what the debtor has done. Having power to undo the act, he lets it pass and is deemed to

assent.   This is the purport of the English decisions, and the
rule might be the same here if a single creditor could put the
debtor into bankruptcy.   *In re Cawkwell*, 19 Ves. 232; *Bam-
ford* v. *Baron*, 2 T. R. 594, (a) note; *Hicks* v. *Burfitt*, 4 Campb.
235; *Ex parte Kilner*, Buck's Cases in Bankruptcy, 105.   But
where the creditor cannot, by any action of his own, repudiate,
dissent from, or undo the act of the debtor, his taking of a
dividend under the assignment cannot be deemed such an
assent to it, or ratification of it, that he will be estopped to
allege it against the debtor as a ground for refusing his dis-
charge.   The act done is, as regards the creditor, unlawful
and improper; constructively fraudulent, in diverting the set-
tlement of the insolvent debtor's estate from that mode of
administration appointed by law to another mode selected
by him; and the appointed consequence of the illegality is the
forfeiture of the right to a discharge if opposed by the cred-
itor so injured.   To hold that the taking of a dividend by the
creditor under this unlawful assignment, which he can neither
prevent nor undo, estops him from alleging the making of it
as a violation of law which forfeits a discharge, would put it
in the power of the debtor, designing an act in violation of
the rights of his creditor, to compel the creditor to elect
either to lose all benefit of the distribution of his estate, or
to lose the right to visit upon him the rightful consequence of
the illegal act.   Such a result would be as clearly against
good faith and good morals, as it is to allow one who has
assented to an act to allege it against the party doing it, to
the disadvantage of that party, as if it were done without his
consent and to his prejudice.

The *dictum* in *Mayer* v. *Hellman*, 91 U. S. 496, 501, to the
effect that creditors are deemed to have acquiesced in preferen-
tial or fraudulent transfers made before the limited period prior
to the bankruptcy, which is prescribed as the limit of time
within which they must be made to be set aside, has relation
only to the recovery of such property by action, and has no
bearing on this question, which arises under the ninth sub-
division of section 5110 of the Revised Statutes.   That sub-
division of the section imposes no limit of time within which

the prohibited act may be done to constitute it a sufficient ground for withholding a discharge.

I think there was no error in the former decision refusing the discharge.