## Case No. 12,494.

### In re SCHUYLER.

[3 Ben. 200; [1] 2 N. B. R. 549 (Quarto, 169); 16 Pittsb. Leg. J. 94; 2 Am. Law T. Rep. Bankr. 85.]

District Court, S. D. New York.  April, 1869.

BANKRUPTCY — DISCHARGE — VOLUNTARY ASSIGNMENT—ESTOPPEL OF CREDITOR.

Where creditors opposed the discharge of a bankrupt on the ground that he had made a voluntary assignment of his property for the benefit of his creditors, contrary to the provisions of the bankruptcy act [of 1867 (14 Stat. 517)] and it appeared that, after the assignee had taken possession of the property under the assignment, an instrument in writing was executed by certain of the creditors, among whom were the opposing creditors, consenting that the assignee might transfer the assigned property to one R., and requesting said R. to "accept such transfer, take possession of said estate, dispose of the same, and distribute the nett avails thereof among all the creditors, according to the terms of said assignment," and thereupon the property was transferred to R. by the assignee: *Held*, that, on this state of facts, the opposing creditors were estopped from setting up the assignment in opposition to the discharge, and that a discharge would be granted when a certificate of conformity was furnished by the register.

[Cited in Re Sawyer, Case No. 12,394; Re Williams, Id. 17,706; Judson v. Courier Co., 8 Fed. 426.]

[Cited in Greene v. Sprague Manuf'g Co., 52 Conn. 372.]

In this case, the discharge of the bankrupt [Spencer D. Schuyler] was opposed on the ground that he, on the 7th of December, 1867, made a voluntary assignment of all his property, for the benefit of all his creditors, to Joseph Wescott; that he was insolvent at the time; and that he made such assignment with a view to prevent such property from coming to his assignee in bankruptcy, and from being distributed under the bankruptcy act, and to defeat the object of that act, and impair, hinder, impede, and delay its operation and effect, and evade its provisions. The voluntary petition of the bankrupt was filed on the 17th of December, 1867. The opposition to the discharge was made by Hunt, Tillinghast & Co., and by Mott, Brothers & Co., creditors of the bankrupt. The voluntary assignee, Wescott, accepted the assignment, and entered on the execution of the trust under it, and took possession of the assigned property. Immediately on doing so, he found it would be impossible for him, in view of his other business employment, to attend to the execution of the trust, and thereupon a paper was prepared, bearing date December 10th, 1867, and was signed by many of the creditors of the bankrupt, and among others by Hunt, Tillinghast & Co., and Mott, Brothers & Co., which recited the fact of the assignment to Wescott, and that it was "a general assignment of all his property, in trust for the payment of all his creditors, without

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

partiality or preference," and that Wescott was willing to surrender the trust, and that Charles Raymond was familiar with the affairs and business of the bankrupt, and then proceeded: "Therefore we, the undersigned, creditors of the said Schuyler, hereby consent, that the said Wescott may transfer the estate, property, and effects, which came to him under said assignment, and we consent to and request of said Raymond, that he accept such transfer, take possession of said estate, dispose of the same, and distribute the nett avails thereof among all the creditors of said Schuyler, according to the terms of said assignment." In pursuance of such request and consent, Wescott, by an instrument in writing, dated January 2d, 1868, transferred to Raymond all the property which passed by the assignment from the bankrupt to Wescott, to convert it into money, and pay the debts of the bankrupt, in the manner specified by the assignment from the bankrupt to Wescott.

D. W. C. Brown, for bankrupt.

C. H. Smith, for creditors.

BLATCHFORD, District Judge. On the above state of facts, it is insisted on the part of the bankrupt, that however obnoxious the assignment by the bankrupt to Wescott may be to the provisions of the bankruptcy act, the creditors who take these objections are estopped from questioning the assignment, or urging the objections, by reason of the fact that those creditors, while enjoying the free election of ratifying or repudiating the assignment, have chosen to ratify it. I think this point is well taken. On the general principles of equity jurisprudence, it is very clear that these objecting creditors would never be allowed, under these circumstances, to come into a court of equity, and impeach the voluntary assignment, either by a direct proceeding to set it aside or in any other way. They stand in the same light towards that assignment as if they had been parties to it on its face. If they themselves had been the voluntary assignees, executing the instrument of assignment, as Wescott did, they would not be allowed, as creditors, to attack it as fraudulent and void as against the bankruptcy act. "Ex turpi causa non oritur actio." Yet their position is no different from what it would have been if they had been assignees under the assignment as well as creditors. They became parties to it by the paper they signed, and the effect of their signature to that paper, followed by the transfer from Wescott to Raymond, was the same, as regarded their relations to the assignment, as if their consent to the original execution of the assignment had been written thereon simultaneously with such execution. "Omnis ratihabitio retrotrahitur et mandato aequiparatur." They would not have been allowed,

after that, to urge the making of the assignment to Wescott as a ground for declaring the assignor an involuntary bankrupt. Perry v. Langley [Case No. 11,006] U. S. Dist. Ct. S. D. Ohio.

There is nothing in the fact that the creditors in question are opposing the discharge of the bankrupt on the grounds urged, which should induce the court to refrain from applying the principle of equity law to which I have referred. The question of withholding a discharge for any of the reasons specified in section 29, when the bankrupt has taken the oath required by that section, and it appears that he has conformed to the modal requirements of the act, is one wherein the creditors are the attacking party. If they enter no appearance and file no specifications, as required by general order No. 24, setting up, as required by form No. 53, some one or more of the causes specified in section 29 of the act as grounds for not granting a discharge, they are regarded as not opposing the discharge, and as assenting to it, and the grounds for refusing a discharge, specified in section 29, are regarded as not existing in respect to the particular bankrupt. So, also, the provision of section 34, that a creditor, in order to attack a discharge after it is granted, by showing that it ought to be avoided for some ground specified in section 29, must show, in addition, that he had no knowledge, until after the granting of the discharge, of the existence of the avoiding act or fact, clearly expresses the view of the law to be, that the creditor who has knowledge, before the discharge, of the existence of an act or fact which would prevent a discharge, may waive his right to enforce such act or fact, simply by his silence, when he might have spoken. If so, certainly, a fortiori, he may waive such right by affirmative acquiescence and ratification, such as these creditors have deliberately manifested in this case. The provisions of the 1st and 2d sections of the act and its whole scope show that the proceedings under it, in the bankrupt case proper, are regarded as proceedings in equity, and are to be governed by the rules and analogies of equity jurisprudence. It follows, that these objecting creditors are estopped from urging these objections, and, as no other objection is seriously urged by them and no other creditor opposes, a discharge will be granted, when a certificate of conformity is furnished by the register.