## Case No. 12,394.

### In re SAWYER.

[2 Hask. 337.][1]

District Court, D. Maine. April, 1879.

BANKRUPTCY—TRADER—FAILURE TO KEEP BOOKS—ASSENT OF CREDITOR.

1. The failure to keep a cash account by a bankrupt trader with the assent of his partner, who is the objecting creditor, will not prevent the bankrupt's discharge at the objection of such partner.

2. Such failure to keep a cash account after the dissolution of the copartnership will prevent the bankrupt's discharge at the objection of his creditor, though his former partner.

3. A bankrupt is a tradesman, who, as ancillary to his business as a tinsmith, kept a small stock consisting of small articles of hardware, locks, pins, needles, thread and the like, for sale in his shop and to furnish to peddlers with his tinware, and which he sometimes peddled himself.

In bankruptcy. Petition of [John H. Sawyer] a bankrupt, for discharge, objected to by a creditor for his not having kept proper books of account.

FOX, District Judge. On the return day of the petition for discharge, Denis S. Perkins, a creditor of the bankrupt, having proved his claim, appeared and objected to his discharge for the reason, that since March 2, 1867, the bankrupt had not kept proper books of account, and especially a cash book.

It appears that the bankrupt and objecting creditor were, for the year previous to February, 1875, in partnership in the stove, tin and hardware business at Mechanic Falls in this district, the business being mostly under the control and management of the bankrupt, who kept the books; that Perkins was about the store, at times, selling the merchandise as called for, and was well aware of Sawyer's method of doing business, and that a cash book was never kept by him, and that this was done, without any dispute or objection by this creditor. Under these circum-

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

stances, Perkins must be understood as having assented to this omission of duty by his copartner, and it is not for him now to insist on this objection, to deprive him of his discharge. The law is as well settled in bankruptcy as in equity, that one who has become a party to, or assented to an act, cannot afterwards for his own advantage denounce this act as illegal. In re. Williams [Case No. 17,706]; In re Brick Co. [Id. 9,259]; In re Schuyler [Id. 12,494]; In re Currier [Id. 3,492].

The firm was dissolved in February, 1875; the bankrupt purchased the interest of Perkins and assumed the partnership liabilities, which he afterwards paid; the stock, amounting to about $2,000, remained in the store, Sawyer disposing of it as best he could, not making any additions thereto. The balance remaining was in April removed by him to Webb's Mills, where he hired a shop of his father-in-law, placing his goods in the front part, and using the rear as a workshop for the manufacture by him of tinware, which was the bankrupt's trade; this stock, at retail prices, was worth about one thousand dollars, and consisted of stoves, tin and ironware, horseshoes, shovels, paints, hoes, cutlery, &c. Sawyer's old sign was over the door; a portion of the time he employed himself in the manufacture of tinware, supplying tin peddlers and also a peddle cart of his own, which he sometimes drove about the country peddling tinware and such other articles as usually form a portion of a peddler's stock in trade; a portion of the time, Sawyer was employed in farming, and when absent his shop was locked up; but for a part of the time, his wife had a key to the shop and waited on customers who desired to purchase. After his removal to Webb's Mills, Sawyer from time to time purchased stoves, castings, sheet-iron, tin and such other goods as were needed in his business; he so conducted up to March, 1878, when his stock being attached, he filed his petition in bankruptcy. During all the time he was at Webb's Mills, he never kept any cash account, nor did his books show his purchases and sales during that period.

It is claimed that, while at Webb's Mills, the bankrupt was not a tradesman within the meaning of the bankrupt act, but only a mechanic, a tinsmith; but in fact, during all this time, he was engaged in both capacities, carrying on his business of a tradesman in stoves, hardware, &c., equally as well as that of a tinman. He, by his sign, held out to the public that he was in trade; he is found all this time with a stock small in value, but probably as large as his business warranted; and this he would replenish as was requisite to meet the demands of the locality. Besides driving a peddle cart himself at times, he supplied two other peddlers, not only with the tinware they required. but with all the other articles, needles, pins, thread, tacks, locks, hardware, and such other articles as these parties carry about for sale, all being

taken from his stock in trade. In so small a place, the demand would not be great for any one article, but the variety required would be extensive; and an examination of the schedule of the goods attached on the writ discloses almost every article which would ordinarily be expected to be found in such an establishment. This party, therefore, is found for these three years in possession of a stock for sale in his store, buying and selling as occasion demanded; he thus held himself out to the public as in trade and that this was one branch of his business; it is not requisite that this should have been his sole business, although the principal part of his capital was thus invested. He did not restrict himself to disposing of his stock brought from Mechanic Falls, but, as his stock was reduced, new goods were procured by him, and the court, therefore, though with regret, is compelled to pronounce that he is brought within the act as being a tradesman, and, not having complied with its provisions, must be denied its relief.

Discharge denied.