SIMONSON v. SINSHEIMER et al.

(Circuit Court of Appeals, Sixth Circuit. July 5, 1899.)

No. 716.

1. BANKRUPTCY—VERIFICATION OF PETITION—WAIVER OF OBJECTIONS.

An objection to a petition in involuntary bankruptcy on the ground of informality or insufficiency in its verification is waived by the tender of a plea and answer on the merits, although the court does not permit the answer to be filed; such objection does not go to the jurisdiction.

2. SAME—DEFENSES TO INVOLUNTARY PETITION—AGREEMENT TO COMPROMISE.

It is not a defense to a petition in involuntary bankruptcy that the petitioning creditors had previously agreed to compromise with the debtor on receiving half the amount of their claims, when it appears that the composition has not been paid, and that half of the debts alleged to be due the petitioning creditors would be a sufficient sum to enable them to maintain the petition.

3. SAME—PETITIONING CREDITORS—ESTOPPEL.

Where a debtor makes a general assignment for the benefit of his creditors, and judicial proceedings are instituted to enforce and carry out the assignment, creditors who, on being made parties to such proceedings, do not repudiate the assignment, nor begin proceedings in bankruptcy, but file their claims under the assignment, and participate in the administration of the estate, and suffer the assignee to sell the property and collect the proceeds, involving a delay of several months, and the incurring of costs and expenses, are estopped thereafter to file a petition in involuntary bankruptcy against the assignor, based solely on the ground of the assignment.

Appeal from the District Court of the United States for the District of Kentucky.

For opinion of the court below, see 92 Fed. 904.

This is an appeal from an adjudication in bankruptcy against the three partners of the firm of Simonson, Whiteson & Co. The appeal is prosecuted by one of the partners. The defendants tendered an answer to the petition some days after the time in which they were required to file one, and on motion for leave to file the same the court considered the question whether the answer contained a sufficient defense to the charge of bankruptcy, and found that it did not. The defendants then filed a motion to dismiss the petition on the ground that it was not properly verified. The motion was denied. The questions on this appeal arise upon the verification of the petition and the sufficiency of the answer. The petition filed on February 14, 1899, after setting forth the necessary jurisdictional facts as to the residence and occupation of the defendants, averred that the three petitioning firms were creditors of the defendants, on account of goods sold them, in the aggregate sum of $10,000, and that defendants had debts amounting to at least $20,000. The petition further averred that within four months next preceding the filing of the petition the defendants, as partners, committed an act of bankruptcy, in making on the 5th day of December, 1898, an assignment to their bookkeeper, one Leonard Comingor, for the benefit of their creditors; that the firm was then insolvent; that said Comingor on the 5th day of December, 1898, accepted the trust created in said deed of assignment, duly qualified as such assignee, and entered upon the discharge of his duties as such; that he sold stock belonging to the estate of the firm, and had in his hands as the proceeds of the sale of said goods the sum of about $70,000. T. W. Spindle, as attorney, verified the petition as follows:

"Commonwealth of Kentucky, County of Jefferson. I, T. W. Spindle, do hereby make solemn oath that I am a member of the firm of Kohn, Baird & Spindle, and that the said Kohn, Baird & Spindle are solicitors for all of the petitioners above named, and that all of the statements contained in the fore-

going petition are true, so far as the same are stated of my own personal knowledge, and those matters which are stated therein on information and belief are true, according to the best of my knowledge, information, and belief; and I do further state that all of the said petitioners and all of the officers and agents of the said Sinsheimer, Levenson & Company are now absent from the state of Kentucky.                                                              T. W. Spindle.

"Subscribed and sworn to before me by T. W. Spindle, this fourteenth day of February, 1899.                             Sam'l A. Lederman, N. P., J. Co., Ky.

"My commission expires January, 1900."

Thereafter the Louisville Banking Company, on the 13th of March, 1899, filed a petition against the same defendants, in which it set out an indebtedness of $17,000 due to the bank. This petition was verified and signed by the Louisville Banking Company, by Theodore Harris, president, and was verified as follows:

"Theodore Harris says that he is president of the Louisville Banking Company, the petitioner herein, and he does make solemn oath that the statements contained in the foregoing petition subscribed by him are true.

"Before me, Ben C. Weaver, Jr., this 13th day of March, 1899.

                             "Ben C. Weaver, Notary Public, Jefferson Co., Ky.

"My commission expires January 12, 1902."

The plea and answer tendered by the defendants denied that the petitioners, or either of them, were creditors in the manner and form alleged in their petition, but averred that several months before the proceeding was instituted, on December 8, 1898, there was an agreement of composition offered by defendants to their creditors, including the petitioners, at 50 cents on the dollar, which proposition was accepted by petitioners and almost all of the creditors of defendant, and that as between defendants' firm and petitioners the original indebtedness and obligation was by said agreement of composition terminated; that the right of petitioners against said defendants' firm was no longer upon the original accounts, sale or delivery of goods and original indebtedness, but upon the composition.

As another defense defendants averred as follows: "These defendants further say that several months before this proceeding was instituted, on December 8, 1898, an action in equity was instituted in the circuit court for the county of Jefferson and state of Kentucky, at Louisville, in and by which the defendant L. Comingor, as trustee, was plaintiff, and these defendants and all creditors of these defendants were defendants, in which said Comingor set forth the assignment for the benefit of creditors, and sued for a settlement of his trust as assignee thereunder, and that in that settlement suit all of the petitioners in this proceeding, long before the institution of this proceeding, were parties defendant, and entered their appearance and filed their claims therein, and have ever since such entry of their appearance been at all times, and are now, parties to said settlement suit in said circuit court of Jefferson county, Kentucky, therein suing, and seeking in the state court to recover their proportion, as creditors of defendants' firm, of the assets of defendants' firm so assigned, which proportion would be the same proportion that they would obtain if said estate were distributed in bankruptcy in this court; that they have never dismissed their proceeding in said court, but were, at the time of the institution of this proceeding, and still are, seeking to recover in said action their proportionate share of the proceeds of said estate as creditors thereof; and that before the service of process or any notice or information of this proceeding the defendant L. Comingor, as assignee of these defendants, under orders of the Jefferson circuit court, which had jurisdiction of the estate, the parties, and the action at that time, paid into court, into the hands of the receiver of the court, and deposited in court in said action, all of the funds in his hands, to wit, all of the proceeds of the estate of these defendants so assigned to him for the benefit of creditors, and all of said funds have been ever since, and now are, in said court in said action, in the actual control and custody of the court for distribution therein, and, but for the proceeding in this court, would be ready now for prompt distribution among the creditors in the same proportion and in the same manner that they would be distributed here, without the extra costs of the proceedings in this court; and these defendants rely on and

plead said other action, suit, and proceeding in the circuit court of Jefferson county, in the state of Kentucky, in bar and estoppel of petitioners' claim herein, and as a good and valid defense to ·said receivership. * * * Defendants further say that in said proceeding the petitioners herein as parties to said suit in the Jefferson circuit court joined therein and united in an order entered in that action, referring said action to the commissioner of said court as a commissioner in chancery to make a settlement of the accounts to said Comingor as assignee, and a distribution among the creditors."

The assignments of error are as follows: "(1) The court erred in refusing to sustain the motion of the defendants Simonson, Whiteson & Co. to dismiss the petition herein. (2) The court erred in refusing to allow the defendants Simonson, Whiteson & Co. to file the answer tendered by them herein, and being the same answer made part of the record by the said decree of March 28, 1899. (3) The court erred in holding that the petitioners herein had debts against the firm of Simonson, Whiteson & Co., either sufficient in amount or of the character which would entitle them to prosecute their petition herein. (4) The court erred in failing to hold that the petitioners had estopped themselves from prosecuting their petition herein on account of the execution by the said Simonson, Whiteson & Co. of the alleged deed of assignment."

A. P. Humphrey, for appellant.

D. W. Baird, for appellee.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

TAFT, Circuit Judge (after stating the facts as above). The objection to the petition that it was not properly verified was waived by a tender of the plea and answer on the merits. It is true that the plea and answer were not permitted to be filed, but they were offered and considered on their merits for the purpose of filing, and we think this is quite sufficient to hold that there was a waiver of defect in the form of the petition. The defect alleged certainly does not affect the jurisdiction. Carriage Co. v. Stengel, 95 Fed. 637.

The second defense to the answer is that of a composition of debts of the bankrupts. The district court held this defense to be insufficient on the ground that there was no accord and satisfaction shown. To this it is replied that the composition itself is a substitute for the original debt, and in that sense is a satisfaction. We do not propose to enter upon a discussion of this not altogether clearly defined exception to the strict rule of accord and satisfaction. It is sufficient for us to say that this petition in bankruptcy is not a suit upon the original debt. It is a proceeding to have the defendants adjudged bankrupts on the ground that they have committed an act of bankruptcy. The proceeding has to be instituted by three creditors with debts of a certain amount. The petitioning creditors are three in number, and have set out their debts; and the defendants seek to impeach their right to have an adjudication of bankruptcy by saying, "We only owe you one-half as much as you say, because you have agreed to reduce your debt 50 per cent." But 50 per cent. of the indebtedness alleged is quite sufficient to qualify the petitioners to begin the proceeding. We think that it would be following a rule of pleading much too strict to hold that where it appears by the admission of the answer that the petitioners are proper persons to file a petition, and have an interest such as to justify them in so doing, the petition must be dismissed because

they have in their petition stated their claims in too large a sum, and on a somewhat different cause of action.

We come now to the third and last defense, which presents the only serious question in the case; that is, whether petitioners, who, being made parties to judicial proceedings to enforce an assignment for the benefit of creditors, do not repudiate the same, but file claims thereunder, and take part in the administration of the assets, seeking payment for their claims out of the proceeds of the assets from sales thereof made by the assignee by virtue of his assignment, are estopped thereafter to file a petition in involuntary bankruptcy against the assignors based solely on the ground of the assignment. We have considered such a defense in the case of Carriage Co. v. Stengel, and refused to sustain the estoppel there claimed, because at the time the assignment was made the statute did not permit the filing of a petition in bankruptcy to avoid the same, and such petition was filed at the earliest moment permitted by law. Moreover, it was not charged there that the petitioners filed claims under the assignment. It is clear from the English authorities that such a plea of estoppel would be good against the petitioner in bankruptcy. Indeed, much less than this has been held to work an estoppel. Bamford v. Baron, 2 Term R. 594, note; Jackson v. Irvin, 2 Camp. 48; Back v. Gooch, 4 Camp. 232; Hicks v. Burfitt, Id. 235, note; Ex parte Cawkwell, 19 Ves. 233; Ex parte Alsop, 1 De Gex, F. & J. 289; Ex parte Stray, 2 Ch. App. 374; In re Hawley, 76 Law T. (N. S.) 501; Ex parte Ridgway, 4 Manson, Bankr. Cas. 41; Ex parte Tealdi, 1 Mont., D. & De G. 210; Olliver v. King, 8 De Gex, M. & G. 110; Ex parte Kilner, Buck, 104. The same principle was followed by the federal bankruptcy courts under the United States bankrupt act of 1867. Perry v. Langley, 19 Fed. Cas. 280; In re Massachusetts Brick Co., 16 Fed. Cas. 1067; In re Williams, 29 Fed. Cas. 1,327. Cases involving a similar principle upon the question of discharge are In re Sawyer, 21 Fed. Cas. 558; Johnson v. Rogers, 13 Fed. Cas. 791; In re Schuyler, 21 Fed. Cas. 760; Judson v. Courier Co., 8 Fed. 426. Loveland, Bankr. 144. Under the present law there have been two cases involving the question, in addition to Carriage Co. v. Stengel, already cited. One (In re Curtis, 91 Fed. 737) arose in the Southern district of Illinois, and the other (In re Romanow, 92 Fed. 510) in the district of Massachusetts. In re Curtis presented substantially the same facts as the Leidigh Carriage Co.'s Case, except that in the former it appeared that the petitioners had filed claims under the assignment. Judge Allen, in the district court, in an elaborate opinion, held that, because the act of 1898 denounced an assignment for the benefit of creditors as an act of bankruptcy, the assignment was absolutely void, and could not be made valid by acquiescence or estoppel; that the proceedings in a state court under an assignment were also avoided by the act, and nothing occurring therein could be used to defeat the jurisdiction of the federal court in bankruptcy. The circuit court of appeals of the Seventh circuit, on appeal, affirmed the order of Judge Allen (In re Curtis, 94 Fed. 630), but did not find it necessary to discuss the question whether the assignment was utterly void. They affirmed the

order on the ground that when the assignment was made the law did not permit a petition in involuntary bankruptcy to be filed, and before it could be filed it was probable, or at least possible, that all the assets of the assignor might be distributed; and on the further ground that it did not appear that the filing of the claims had misled any person to his prejudice into reliance upon the assignment. This conclusion is in exact accord with our decision in the Leidigh Carriage Co.'s Case. Judge Lowell, in Re Romanow, followed Perry v. Langley, and holds that an assignment consented to and participated in by the petitioning creditor estops him from relying upon that as a ground for seeking to have the assignor adjudged a bankrupt.

After an examination of the foregoing cases and the statutes under which they were decided, we are unable to concur with Judge Allen in his conclusion that a petitioning creditor may not be estopped to set up an assignment for the benefit of creditors as a ground for adjudging the assignor a bankrupt. Could one who had induced and abetted another to convey to him property in fraud of creditors file a petition against his fraudulent grantor, basing his petition on the fraudulent conveyance? It seems to us clear that he ought not to be permitted thus to take advantage of his own wrong. To hold otherwise would enable the unscrupulous to entrap a person into involuntary bankruptcy. This has been the view of the courts under all previous bankrupt laws, and any person conniving in the alleged act of bankruptcy, whether it be actually fraudulent or only constructively so, has always been denied relief asked on the ground of such act. Are the provisions of the present law upon this point so different from the earlier laws of this country and the English law as to justify a different holding? The present law declares the assignment for the benefit of creditors to be an act of bankruptcy, but this is only what was uniformly held to be the effect of the act of 1867 and of the English bankrupt laws. George M. West Co. v. Lea, 19 Sup. Ct. 836; In re Gutwillig, 90 Fed. 475. Under the law of 1867, an assignment for the benefit of creditors was valid if not impeached by a petition in bankruptcy within four months after its execution. Mayer v. Hellman, 91 U. S. 496. Nothing in the law of 1898 has been called to our attention that will justify a different construction. It is entirely true, as Judge Allen points out, that it would defeat the object of the bankruptcy law to hold that bankruptcy proceedings do not supersede and avoid the proceedings in the state court under an assignment law. But the estoppel we are considering, if recognized and enforced, does not affect or detract from the paramount character of bankruptcy proceedings, when properly begun, but only prevents the institution of such proceedings, by persons who were privy to the act of which they complain, and on which they found their prayer for an adjudication.

While, however, the same general principles of estoppel against petitioning creditors ought to apply to proceedings under the law of 1898 as under the law of 1867 and the English act, there are certain distinctions between cases arising under the acts that should be noted, and which should have weight in applying the doctrine of estoppel to proceedings under the present law. In England the ques-

tion of estoppel arises upon common-law assignments. Such an assignment does not take effect until assented to by some of the creditors in whose behalf it is executed. The assent may be expressed either formally or by very trivial acts in pais, but it must affirmatively appear. Hence the slightest assent to an assignment expressed by a creditor verbally or otherwise becomes important, as essential to the taking effect of the deed at all. The creditor who assents, therefore, in effect takes part in the execution of the deed, and is, so to speak, an accessory before the fact. This explains what seems, in reading the English cases, to be unnecessary and unjustifiable strictness in holding creditors to be estopped to base a bankruptcy proceeding on an assignment which they certainly did not induce, and in which they gave but the slightest signs of acquiescence. In this country deeds of assignment are usually given effect by filing them in some public office, or are presumed to be accepted, and they do not generally require an affirmative expression of assent on the part of any creditor to give them legal efficacy. Hence in this country the assent of the creditors is not so important as in England, and is chiefly material here in that it may mislead others to their prejudice, if afterwards the assenting creditors attack the assignment, and avoid transactions entered into on the faith of its not being so impeached.

Another distinction between the English cases and those arising here is in the fact that in England one creditor may file a petition in involuntary bankruptcy. This was the case originally under the law of 1867, though it was changed by the amendment of 1874, which required that a petition in involuntary bankruptcy should be joined in by creditors who were one-fourth in number of all the creditors, and had one-third in amount of all the debts. When a man has the option himself of impeaching an assignment at any time, failure to do so, accompanied by silent acquiescence in the assignment proceedings, is much stronger evidence of his ratification of the assignment, and ought to weigh much more against him, on a question of estoppel, than under a law where he cannot impeach the assignment except by securing joint action with himself of enough creditors to make the petitioners one-fourth in number of all the creditors, and their debts one-third in amount of the entire indebtedness. He may very well have grave doubt of his ability to secure the necessary co-petitioners, and meantime he ought not to lose his rights under the assignment by failing to put himself in a position where, if he cannot impeach the assignment, he may share its benefits. It is not, and ought not to be, the policy of the law, or the result of any construction of the statute, to put a creditor, who is only seeking to collect as much as he can properly on a just debt, in a puzzling dilemma, in which he may, by merely protecting himself against total loss, cut himself off from an efficient remedy which the law intended to secure him and his fellow creditors. This was a consideration dwelt upon by Judge Choate in Re Kraft, 3 Fed. 892, as furnishing reasonable ground for distinguishing cases of estoppel under the English acts and the act of 1867, on the one hand, and those under the amendment of 1874, on the other; and a similar suggestion is made by Judge Jenkins, in

speaking for the circuit court of appeals of the Seventh circuit, in Re Curtis, supra, in reference to the act of 1898. The argument has not so much weight under the present law, however, because only three creditors are required to sign the petition, and their claims need aggregate only $500. A single creditor may much more easily assure himself as to the possibility of his securing the needed joint action to institute bankruptcy proceedings now, than under the amendment of 1874.

The doctrine of election of remedies has been invoked in this controversy by counsel for the appellant, and is referred to by Judge Jenkins in Re Curtis, but we doubt whether it has here full application, if for no other reason, because, when a man's selection of a remedy depends on the will of others, he cannot be said to have a complete right of election. While the doctrine may have originally rested wholly on estoppel, it would be difficult now to explain thus all the cases of election. We think the only just ground for refusing to allow a man to complain of an act of bankruptcy is that he induced the act, or after its commission he so acted with regard to it that he gave others the right to act on the faith of its validity so far as his subsequent conduct would affect it. On the one hand, it would be gross inequity to allow him to subject the debtor to judgment for an act he induced; and, on the other, it would be equally unjust to allow him to repudiate, as invalid, a transaction, when by his conduct he had induced others to change their position on the faith of its validity. Further than this we do not think we should go, under the present act.

Coming to apply our conclusions to the case at bar, we cannot doubt that the answer tendered made a case of estoppel against the petitioners. They are alleged to have become parties to the assignment proceedings, to have filed their claims under the assignment, to have requested a reference to pass upon the claims, the accounts of the assignee, and the questions of distribution. They waited three months and a half before filing their petition. By their acquiescence they certainly induced the assignors, the assignee, and the purchasers of the assets from the assignee to believe that they would not seek to set aside the assignment. Were the assignment to be set aside now, it would avoid every sale the assignee has made, and revest in the trustee in bankruptcy the title of the assignors. It is conceded that the distribution under the assignment would be exactly the same as under the bankruptcy proceedings. The bankruptcy proceedings will only increase the costs, and possibly defeat the payment of the costs already earned in the state court proceedings. Had these creditors filed their petition soon after the assignment, all the unjust results of their delay pointed out would have been avoided, for then the assignee would not have sold the assets, and the state officers would not have rendered the services, and the creditors would not have distribution delayed by four months. As it is, we think the answer stated a good defense, and that the court erred in not allowing it to be filed. On the filing of the answer, the petitioners will, of course, be given an opportunity, by amendment of the petition or otherwise, to show any facts which should prevent the operation of

an estoppel against them. The judgment of the court is reversed, with directions to take further proceedings not inconsistent with this opinion