### In re MAMMOUTH PINE LUMBER CO.

(District Court, W. D. Arkansas, Texarkana Division. May 20, 1901.)

BANKRUPTCY—JURISDICTION OF COURT—RIGHT OF INTERVENING CREDITORS TO MAINTAIN PETITION.

Certain creditors of a corporation filed a petition in bankruptcy against it, being sufficient in number, and setting up claims sufficient in amount, to warrant an adjudication. Subsequently other creditors intervened, and adopted the petition as their own; the first filing his petition in intervention within four months after the alleged act of bankruptcy. Afterwards some arrangement was made with the original petitioners, which induced them to refuse to prosecute further, and they moved its dismissal. *Held*, that the court acquired jurisdiction under the original petition, which was sufficient on its face, whether or not the claims of the petitioners were in fact provable, which jurisdiction was continued by the interventions; and that the interveners, being sufficient in number, and holding claims sufficient in amount, were entitled to maintain such petition as their own.

In Bankruptcy. On petition in involuntary bankruptcy.

L. A. Byrne, for bankrupt.
Webber & Webber, for petitioning creditors.

ROGERS, District Judge. This was a petition in bankruptcy, filed by the firm of W. J. Echols & Co., the Merchants' Bank of Ft. Smith, Ark., and the Echols Dry-Goods Company (all of which are hereafter called the "Ft. Smith creditors of the Mammouth Pine Lumber Company"), for the purpose of having the Mammouth Pine Lumber Company adjudicated a bankrupt. The petition was filed on the 26th day of July, and service issued on that day. The South Texas National Bank and T. W. House intervened, and filed their respective answers to the petition on August 8, 1900, and on the 16th of August, 1900, the Mammouth Pine Lumber Company also filed its answer, and asked for a trial of the issues. The Mammouth Pine Lumber Company alleges that the Ft. Smith creditors have no provable claims against the Mammouth Pine Lumber Company, and the above-named interveners allege that they have provable claims in large amounts against the estate, and also allege that

the Ft. Smith creditors have no provable claims against the Mammouth Pine Lumber Company. The act of bankruptcy alleged in the original petition is, in substance, that the Mammouth Pine Lumber Company is insolvent, and that within four months next preceding the date of this petition the said Mammouth Pine Lumber Company committed acts of bankruptcy, in that it did heretofore, to wit, on the 29th day of March, 1900, while insolvent, transfer, sell, assign, and convey a large portion of its property to the Union Trust Company of St. Louis, and other creditors, with intent to prefer said creditors over its other creditors, and has since conveyed and transferred its property to other creditors with intent to hinder and delay petitioners and other creditors, and to give a preference to other creditors. Subsequently, other creditors, under section 59f of the bankrupt law, intervened, and made themselves parties to the original petition filed by the Ft. Smith creditors, adopting the same as their own, and now seek to prosecute the petition to adjudicate the Mammouth Pine Lumber Company a bankrupt. At the trial it was insisted that under section 59b the Ft. Smith creditors, who filed the original petition, having no provable claims against the Mammouth Pine Lumber Company, were not authorized to file a petition for its adjudication in bankruptcy, and therefore the court could acquire no jurisdiction of the subject-matter by virtue of said petition and proceedings thereon. As to whether the Ft. Smith creditors had provable claims or not there was a conflict of evidence, but the court does not find it necessary to determine that question, because, under section 59f, other creditors had the right to make themselves parties to the petition, adopt the same as their own, and prosecute the cause as if the petition had been originally filed by them; and accordingly, on July 30, 1900, the State National Bank of Oklahoma intervened, and filed its petition, alleging it had a provable claim, adopted the original petition, making itself a party thereto, and joined in the prosecution of the suit for the adjudication of the Mammouth Pine Lumber Company a bankrupt. The deed of trust to the Union Trust Company of St. Louis was executed on the 24th of March, 1900, and it was recorded in Little River county, Ark., where a very small portion of the property of the Mammouth Pine Lumber Company was situated, on the 29th of March, but was not recorded in Sevier county, Ark., which was the habitat of the corporation, and where nearly all of its property was situated, until March 31, 1900. So that it appears that the State National Bank of Oklahoma intervened and filed its claim, as above stated, one day before the four months had expired after the execution of the deed of trust to the Union Trust Company of St. Louis. If, therefore, it were determined (which is not the case, since it is not necessary to determine it) that the Ft. Smith creditors had no provable claims against the bankrupt, nevertheless the court had acquired jurisdiction to determine that particular question, and within the four months after the deed of trust was recorded in Sevier county the Oklahoma National Bank had made itself a party to the proceedings, and concerning the provability of its claim there is no controversy whatever. La-

ter, but after four months had expired from the recording of the trust deed to the Union Trust Company of St. Louis, various other creditors, largely in excess of the necessary number and amount, also intervened, and made themselves parties to the original petition, and joined with the State National Bank of Oklahoma in the prosecution of its suit. After all this had transpired, some arrangement was made between the Ft. Smith creditors and the creditors who were opposing the adjudication in bankruptcy of the Mammouth Pine Lumber Company, whereby it was agreed that the Ft. Smith creditors declined to· longer prosecute the suit, and moved to dismiss it; and the question now arises as to whether or not the intervening creditors can prosecute it.

It will be remembered, in this connection, that by section 3b of the bankrupt law it is provided that a petition may be filed against a person who is insolvent, and who has committed an act of bankruptcy within four months after the commission of such act. Such time shall not expire until four months after the date of the recording or registering of the transfer or assignment, when the act consists in having made· a transfer of any of his property with the intent to hinder, delay, or defraud his creditors, or for the purpose of giving a preference as hereinbefore provided, or a general assignment for the benefit of his creditors, if by law such recording or registering is required or permitted; so that the four months begins to run from the recording of the instrument, and not from its execution. In this case it was necessary to record the instrument of writing, because the mortgage covered large quantities of real estate. The intervention of the State National Bank of Oklahoma within the four months after the execution of the deed of trust, whereby it adopted the petition of the Ft. Smith creditors, made that petition its own as much as if it had been originally filed by the Oklahoma bank. So that, if it were conceded that the Ft. Smith creditors had no provable claims against the bankrupt, the petition of the Ft. Smith creditors, which was adopted by the State National Bank of Oklahoma, still remained, and the court was called upon to determine whether or not, upon its petition, the Mammouth Pine Lumber Company could be adjudicated a bankrupt. Conceding, for the purpose of the argument, that the Mammouth Pine Lumber Company could not be adjudicated a bankrupt upon the sole application of the State National Bank of Oklahoma, ·the question then arises whether or not, if, subsequent to the expiration of the four months, other creditors united in the petition of the Oklahoma bank sufficient in number and amount, the court would still retain jurisdiction, and might proceed to the determination of the question. as to 'whether the Mammouth Pine Lumber Company should be adjudicated a bankrupt. Upon this question we are not without authority. In the third edition of Collier on Bankruptcy, at page 330, the author says:

"It seems to be the rule that where, upon the filing of an involuntary petition in bankruptcy, there are not the proper number of·petitioning creditors, or sufficient amount of claims to support the petition, but subsequently, and before the adjudication, other creditors enter their. appearance, and join in

the petition, such creditors and the amounts of their claim will be reckoned in making up the number of the creditors and the amount of claims necessary to support an involuntary petition in bankruptcy. In re Romanow (D. C.) 1 Am. Bankr. R. 461, 92 Fed. 510. It was also held in this case that, where there were not a proper number of petitioning creditors, nor a sufficient amount of claims to support the petition, but subsequently, and before the adjudication, but more than four months after the act of bankruptcy, other creditors entered their appearance, and joined in the petition, the petition is valid, and the adjudication may be had upon it, as it is immaterial when the other creditors join in the petition, since it was filed within the four months after the commission of the act of bankruptcy by the insolvent debtor. But a later case (In re Beddingfield [D. C.] 2 Am. Bankr. R. 355, 96 Fed. 190) limits the practice to cases where apparently the original petition represented a sufficient number of creditors and claims and conferred jurisdiction."

It will be seen that on the face of the petition in this case there was apparently a sufficient number of creditors and a sufficient amount of indebtedness to enable the court to adjudicate the Mammouth Pine Lumber Company a bankrupt in the event they all had provable claims, so that both of the above cases cited support the case at bar. The same author, at page 331, states that:

"In the case of In re Mercur (D. C.) 2 Am. Bankr. R. 626, 95 Fed. 634, the rule was clearly laid down that, where but one creditor has made a petition to his debtor to be adjudicated a bankrupt, alleging that the creditors are less than twelve in number, when in fact there are more than twelve, other creditors may be allowed to join in the petition, and the original petition may be amended, even though the amended petition sets up an act of bankruptcy other than that alleged in the original petition."

There is no pretense in the case at bar that the Ft. Smith creditors were sham creditors. When they filed this petition, they were acting in good faith, and antagonistic to the Mammouth Pine Lumber Company. So that on the face of the proceedings there can be no doubt, if the cases cited above are sound, the proceedings should stand, and the creditors who made themselves parties to the proceedings, after the expiration of the four months, should be taken into consideration in determining whether or not the necessary number of creditors and amount of indebtedness existed upon which the Mammouth Pine Lumber Company could be adjudicated a bankrupt. The same doctrine is maintained in the case of In re Stein, decided by the court of appeals of the Second circuit, Wallace, J., delivering the opinion of the court; the case being reported in the April 15, 1901, number of the National Bankruptcy News, at page 428, 105 Fed. 749. I have found no decision to the contrary. In this case, it being admitted that the creditors who joined in the petition of the Oklahoma bank have provable claims, and that the number and amount are sufficient, and it being admitted that the Mammouth Pine Lumber Company was insolvent when the petition was filed, the adjudication necessarily follows.