OHIO MOTOR CAR CO. v. EISEMAN MAGNETO CO. et al.

(Circuit Court of Appeals, Sixth Circuit.   February 8, 1916.)

No. 2652.

1. BANKRUPTCY ⊜64—ACTS OF BANKRUPTCY—ESTOPPEL.

In September, 1912, a suit was commenced in a state court in which a receiver of a motor car company was appointed. On October 9th, the receiver was ordered to give notice to creditors to present their claims before January 9, 1913. On November 19, 1912, the receiver reported an offer of $40,000 for the company's property subject to a mortgage, and notice was thereupon given to creditors and a hearing granted on December 2d. On December 11th the sale was ordered. On April 21, 1913, an order was made for the payment of a dividend of 15 per cent., which practically closed the receivership proceeding. In October, 1912, a bankruptcy petition, alleging the receivership and a preferential transfer as acts of bankruptcy, had been filed, and in February another creditor was permitted to file an intervening petition; but neither creditor objected to the receivership proceeding, and nothing further was done in the bankruptcy proceeding until May, 1914, when an order was made reciting the withdrawal of the petitioning and intervening creditors and a demand by the company for the dismissal of the petition. Thereafter 5 creditors, who had acquiesced in the receivership and been paid the dividend, out of 349 creditors, intervened and adopted the original petition, except admitting that they were estopped to urge the receivership as an act of bankruptcy. *Held,* that they were equally estopped to rely upon the preferential payment as an act of bankruptcy, as they were chargeable with notice of the bankruptcy proceeding, and of the acts of bankruptcy alleged, and when they learned, at the time the sale was ordered, that the assets would fall far short of satisfying the company's indebtedness, they were put to their election, and, after acquiescing in the proceedings in the state court and obtaining their proportionate share of the proceeds of the sale, they could not change their attitude from an assenting to an antagonistic course respecting the receivership.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 97; Dec. Dig. ⊜64.]

2. BANKRUPTCY ⊜467—ACTS OF BANKRUPTCY—ESTOPPEL.

Though a trial by jury had been demanded in the bankruptcy proceeding, it could not be presumed that an application to the bankruptcy court to have the hearing upon the question of adjudication expedited or an application to the state court to stay proceedings in that court would have been denied, and hence the course adopted by such intervening creditors was not necessary.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. ⊜467.]

3. BANKRUPTCY ⊜391(3)—STAYING PROCEEDINGS IN STATE COURTS.

In obedience to the rule of comity, an application to stay proceedings in a state court in possession of property through a receiver, because of the pendency of bankruptcy proceedings, should first be presented to the state court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 649–654; Dec. Dig. ⊜391(3).]

4. BANKRUPTCY ⊜391(3)—STAYING PROCEEDINGS IN STATE COURTS.

In view of the paramount character of the Bankruptcy Law, the jurisdiction of the bankruptcy court, when properly invoked, is exclusive as respects the administration of the affairs of insolvent persons and corporations, and insolvency proceedings pending in state courts may be enjoined within four months after their commencement, especially as Rev. St. § 720, providing that an injunction shall not be granted to stay

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

proceedings in any court of a state, expressly excepts cases where the injunction is authorized by any law relating to bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 649–654; Dec. Dig. ☞391(3).]

5. BANKRUPTCY ☞464—APPEAL—ASSIGNMENTS OF ERROR—NECESSITY.

Under rule 11 of the Sixth circuit (150 Fed. xxvii, 79 C. C. A. xxvii), relative to the filing and form of assignments of error, which provides that errors not assigned according to that rule will be disregarded, but that the court at its option may notice a plain error not assigned, the error in adjudging a party a bankrupt on the petition of creditors, who were estopped to set up the act of bankruptcy relied on, was of such a character that it should be noticed, though not properly assigned.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞464.]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Petition in bankruptcy by the Eiseman Magneto Company and others against the Ohio Motor Car Company. From a decree adjudging the defendant bankrupt, it appeals. Reversed with directions.

A receivership suit in a state court, and shortly afterwards a bankruptcy suit in the court below, were commenced against appellant; and, broadly stated, the controlling question arising on this appeal is whether creditors, who without objection to the proceedings participate in the distribution of their debtor's assets in the receivership suit, can thereafter in the bankruptcy suit abandon the effect of appointment of the receiver as an act of bankruptcy and rightfully insist that the debtor be adjudged a bankrupt for alleged preferences set out as acts of bankruptcy.

1. *Receivership Suit.*—September 25, 1912, the Diamond Rubber Company of New York commenced an action against the Ohio Motor Car Company, in the court of common pleas of Hamilton county, Ohio, on behalf of itself and all other creditors, including the stockholders of the corporation, alleging, among other things: That plaintiff was the owner of defendant's past-due promissory note for $6,000, upon which payment had been refused; that the property of defendant at a fair valuation exceeded its liabilities in the approximate amount of $200,000; that it was abundantly solvent, but unable to convert its assets into money to meet its maturing liabilities, or to borrow enough money to carry on its business for the time being. After further stating the usual grounds for appointment of a receiver in such circumstances, the ordinary prayer in that behalf was set out. The company appeared by answer on the same day, alleging that it had assets in excess of its liabilities, admitting the allegations of the petition, and joining in the prayer for appointment of a receiver. The court made a consent order on the same day, reciting that the cause was heard upon the petition and answer, "the proofs and motion for a receiver," finding that "the facts are as alleged in the petition," and appointing Edward G. Schultz receiver. The receiver was in terms empowered to take immediate possession and control of the property, and to carry on and operate the business of defendant; also to purchase and pay for material and supplies, employ labor, and, if necessary, borrow money. The receiver accepted the appointment, gave an approved bond, and entered into possession. Appraisers were shortly afterward appointed. October 9th the receiver was ordered to give to the creditors public notice of his appointment and of the fact that they should present their claims to him for allowance on or before January 9, 1913, or be forever barred from participating in the distribution of the assets, but this period was subsequently extended 30 days.

In October, 1912, proceedings were begun looking to the sale of the property and obtaining bids for purchase at either public or private sale. November 18th appraisement was filed fixing valuation of the assets at $211,881.54.

The receiver having reported the best obtainable offer to purchase the property at private sale to be $40,000 in cash and the assumption of a mortgage of $25,000 upon the property, and having, pursuant to order of the court, notified all the creditors of the offer and that it would be heard at a time stated, he was upon hearing directed to execute a deed of conveyance of the real estate, and a bill of sale of the chattel property, except cash on hand, bills receivable, and choses in action; and this order was carried ·out. The' total sum received for the assets of the company, except some outstanding accounts, was $74,650.10. The amount of the outstanding accounts is not given, though it is to be inferred that their value is inconsiderable.

April 21, 1913, an order was made providing for payment of· costs and expenses of the receivership, and also of a dividend of 15 per cent. upon all claims not in controversy; two claims presented by the Fifth-Third National Bank of Cincinnati, and one claim by the Miami Valley National Bank of Hamilton, Ohio, were in dispute, were materially reduced, and then· allowed; and as so reduced a like dividend was ordered to be paid on them. These transactions seem for all· practical purposes to have closed the receivership, proceeding.

2. *Bankruptcy Suit.*—October 28, 1912, three creditors filed in the court below a petition in bankruptcy against the Ohio Motor Car Company, setting. out their several claims as creditors, with the ordinary averments, and in substance three alleged acts of bankruptcy: (1) Stating in three paragraphs, differing in form, though in effect substantially the same, that respondent, being insolvent, through agreement with the Diamond Rubber Company, caused its property to be placed in possession of a receiver under the laws of Ohio, applied for a receiver for its property under the same laws, and through such agreement caused and permitted its property to be transferred to a receiver with intent to deprive its creditors of the right to have the corporate assets administered in bankruptcy, and so caused the property to be transferred with intent to hinder and delay its creditors; (2) that on May 1, 1912, respondent, while insolvent, made and executed an intended preference through a chattel mortgage in the form of a bill of sale for 11 automobiles, to secure $11,552.18 owing by respondent to the Miami Valley National Bank, that the bank did not take "open, notorious, and exclusive possession of the automobiles," and that the mortgage was not filed until September 25, 1912; (3) that, while insolvent, defendant did, within four months next preceding the filing of the petition in bankruptcy, transfer "two or more automobiles" to the same bank, with intent to prefer, etc. The prayer is that defendant be adjudged a bankrupt. November 18, 1912, respondent filed an answer, denying the commission of the acts alleged, or that it was insolvent, and demanding trial by jury.

February 18, 1913, Ernst A. Roden was permitted to file an intervening petition, alleging that he was a creditor, and adopting the allegations of the petition as to insolvency and the commission of the acts of bankruptcy therein alleged. He was directed to be made a party, with his name inserted in the original petition as one of the petitioning creditors. May 14th, following, an order was made reciting the withdrawal of the petitioning and intervening creditors and a demand of respondent to dismiss the petition, and· directing that the clerk mail to each of the creditors a specified notice; a ·complete list of creditors having theretofore been filed with the court. May 21st an affidavit was filed showing that this order was complied with by mailing the required notices to 349 creditors. The notices so mailed informed the creditors of the withdrawal of the petitioning and intervening creditors, and of the particular time fixed for hearing the matter of dismissal, June 2d. On that day the Troy Carriage Sunshade Company filed objection to dismissal. June 7th five other creditors presented a petition for leave to intervene in the action and be made parties thereto, setting up their several claims amounting to $1,185.92, and stating, among other things: That the claims were past due and unpaid, "with the exception of the 15 per cent. thereof which has been paid by the receiver"; that they adopt the allegations of the original petition, "except that your petitioners are advised and believe that by reason of their acceptance and credit upon their respective claims

as above set forth of the sum of fifteen (15%) per cent. paid by said receiver in the state court, your petitioners are estopped from and do now abandon any claim to adjudication upon the ground of the appointment of said receiver having constituted an act of bankruptcy"; and praying to be permitted to intervene, to be made parties complainant, and to have their rights adjudicated. June 10th an order was made reciting that the cause was heard on motion of the respondent and E. A. Roden, intervening petitioner, to dismiss, and on the new petition of intervention, and denying the motion to dismiss, but allowing the parties, whose petition was filed June 7th, to intervene, making them parties and granting leave to respondent to answer. June 24th respondent filed an amended and supplemental answer, reciting the proceedings had in the receivership suit, attaching as an exhibit a transcript of the docket and journal entries of the common pleas court in that suit; alleging that the interveners acquiesced and participated in the receivership proceedings, accepted the dividend paid by the receiver on their claims filed with and allowed by him, and that their conduct in such receivership proceedings operated as an estoppel in respect of each and all the alleged acts of bankruptcy; denying all the allegations of the petition not expressly admitted; and demanding that the matters be inquired into by a jury. The right of trial by jury was subsequently waived in writing, and the cause was heard and disposed of by the court. January 7, 1914, an order was made reciting that the cause was heard upon the intervening petition of the "National Carbon Company et al." (filed June 7, 1913), and the answer of the respondent, and adjudging respondent bankrupt. Motion for a new trial was subsequently overruled, and respondent appeals.

Pogue, Hoffheimer & Pogue, of Cincinnati, Ohio (Province M. Pogue and Harry M. Hoffheimer, both of Cincinnati, Ohio, of counsel), for appellant.

Henry Bentley and W. B. Mente, both of Cincinnati, Ohio, for appellees.

Before WARRINGTON and DENISON, Circuit Judges, and McCALL, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). [1] It is to be observed that the receivership proceeding was begun in the state court September 25, 1912, and practically concluded April 21, 1913, and that the bankruptcy proceeding was commenced in the court below October 28, 1912; but, aside from the filing of the answer and allowance of a single intervention, nothing was done in the case until May 14, 1913. At that time an order was made, reciting that the petitioners and intervener had withdrawn their application in bankruptcy and that respondent was demanding dismissal, directing that notice of these facts be given to all the creditors and fixing June 2d to hear the matter of dismissal. It is to be inferred from the proof of the execution of this order that there were 349 creditors. It was not until the day fixed for the hearing that any creditor appears to have objected to the dismissal. On that day one corporate creditor, having a claim for $456.45, filed an objection; and on the same day the only person who had then intervened moved for his dismissal and that of the cause itself. On June 7th, however, 5 creditors sought to intervene for the purpose of prosecuting the two acts of preference alleged in the original petition. They admitted estoppel as to, and so abandoned, any claim to adjudication "upon the ground of the appointment of said receiver having constituted an act of bank-

ruptcy." Concededly these creditors, as well as all the other cred-- itors, filed their claims in the suit and participated in the distribution made of respondent's assets in the state court. According to the record, no step of importance was taken in the state court after appointment of the receiver, until seasonable notice and opportunity to be heard had been given to the creditors. Although the present petitioning creditors were not made formal parties to the receivership suit, they seem, at least through their counsel, to have appeared at such hearings and acquiesced in the orders that followed; certainly none of the creditors appears to have objected to any of the orders. The significance of such a situation as this cannot escape attention. The conduct of all the creditors was calculated to induce each to believe that the rest were assenting to the orders made in the state court. Further, the fact that 343 of the 349 creditors are, so far as appears here, still satisfied with the results of the course they pursued in the state court, justifies an inference that the creditors then believed their interests would under the existing conditions be as well subserved in the receivership suit as in the bankruptcy proceeding—if, indeed, they would not be better subserved, in view of the additional expense of maintaining the bankruptcy proceeding. There was nothing in the law to forbid the creditors to adopt such a course; but whether the law also sanctions their subsequent adoption of an opposed course is a different matter.

Every creditor so taking the benefits of the receivership suit was chargeable with notice of the bankruptcy proceeding and of the acts of bankruptcy alleged. This is because of the representative character of a bankruptcy suit; it is for the benefit of all the creditors. This characteristic, of course, pervades the Bankruptcy Act. It was, for instance, in virtue of section 59f (which authorizes creditors other than the original petitioners "at any time" to "enter their appearance and join in the petition"), that the interveners were permitted to join in the petition, although more than four months had elapsed after the acts of bankruptcy were alleged to have been committed. In re Stein, 105 Fed. 749, 751, 45 C. C. A. 29 (C. C. A. 2d Cir.); In re Romanow (D. C.) 92 Fed. 511, 512; In re Mammouth Pine Lumber Co. (D. C.) 109 Fed. 308, 310; In re Mackey (D. C.) 110 Fed. 355; 1 Loveland (4th Ed.) 388, note 7; Collier (9th Ed.) 779. And see In re Haff, 136 Fed. 78, 81, 82, 68 C. C. A. 646 (C. C. A. 2d Cir.). Furthermore, in the present instance the interveners admitted knowledge of the bankruptcy suit and of the acts of bankruptcy there charged, since they averred in their petition of June 7, 1913, that "petitioners are familiar with, adopt, and approve the allegations of the principal petition herein as to the insolvency of the respondent and the commission of the acts of bankruptcy as therein alleged." It is not suggested, and it would scarcely be claimed, that the acts of bankruptcy charged, one as well as another, could not be waived by the creditors; and the question at last is whether in effect they have not done so.

The express waiver, the abandonment, contained in the intervening petition was in recognition of the rule laid down by this court in Si-

monson v. Sinsheimer, 95 Fed. 948, 954, 37 C. C. A. 337, 344, where it was held that a man will not be allowed to complain of an act of bankruptcy, such as the making of an assignment for the benefit of creditors, if he induced the act—

"or after its commission he so acted, with regard to it that he gave others the right to act on the faith of its validity so far as his subsequent conduct would affect it. On the one hand, it would be gross inequity to allow him to subject the debtor to judgment for an act he induced; and, on the other, it would be equally unjust to allow him to repudiate, as invalid, a transaction, when by his conduct he had induced others to change their position on the faith of its validity."

See, also, In re Romanow, supra, 92 Fed. at page 511; Clark v. Henne & Meyer, 127 Fed. 288, 297, 62 C. C. A. 172 (C. C. A. 5th Cir.); Moulton v. Coburn, 131 Fed. 201, 203, 66 C. C. A. 90 (C. C. A. 1st Cir.); Depres v. Galbraith, 213 Fed. 190, 192, 193 (C. C. A. 8th Cir.); Utz & Dunn Co. v. Regulator Co., 213 Fed. 315, 317, 130 C. C. A. 17 (C. C. A. 8th Cir.); Lowenstein v. Henry McShane Mfg. Co. (D. C.) 130 Fed. 1007, 1008; In re Gold Run Mining & Tunnel Co. (D. C.) 200 Fed. 162, 163; In re Commonwealth Lumber Co. (D. C.) 223 Fed. 667, 672, 673.

True, the acts of bankruptcy complained of in those cases were either assignment or receivership proceedings; and counsel for appellant concede that no kindred case has been found where any act of bankruptcy, other than acts such as these, was involved. This might be controlling, if it were not for the doctrine that fraud itself may be waived. We may say in passing, however, that one, if not both, of the acts of preference alleged would seem to have proved practically harmless. We think it safe to say upon the present record that the Miami Valley National Bank, as well as the Fifth-Third National Bank, made a loan to the adjudged bankrupt (under the corporate name it then bore—Jewel Carriage Company) upon the faith of the company's promise to transfer to the bank certain automobiles by bill of sale or chattel mortgage to secure the loan; that the transactions as to both banks were carried into execution. But concededly the lien of the Fifth-Third Bank was so far preserved as not to be questioned here, while as to that of the other bank the District Judge found:

"The admitted transfer of the automobiles was not effective, either as a sale or pledge. * * * No possession passed, and the company continued to deal with the automobiles as its own."

It would therefore seem that the Miami Bank lost the substantial portion of the loan and the entire subject of the intended pledge; for (1) we do not discover that the bank received anything for the automobiles, though (2) it is alleged in the amended answer of the Motor Company, without denial (the fact, however, not otherwise distinctly appearing), that the loan was included in the claim of the bank which was disputed, and ultimately reduced and allowed, and upon which the 15 per cent. dividend was paid; and this is in accord with the natural inference that the bank would prove its claim for all the lawful loans it held against the Motor Company.

In the view we take of the case, however, it is not necessary to pass upon the alleged acts of preference. Granting that either or both of these acts were committed, it is difficult to see why the conduct of the intervening creditors should admittedly estop them from claiming adjudication upon the first act of bankruptcy charged and should be totally without effect as to the others. The creditors were put to an election of the course they should pursue the moment they saw the difference between the appraisement of the property and the price at which it was proposed to sell it. The receiver reported the offer November 19, 1912; notice was thereupon given to the creditors, and a hearing granted December 2d. It was not until December 11th that the sale was ordered; and it is to be remembered that the time as originally fixed for filing creditors' claims in the receivership suit did not expire until January 10, 1913, and, as extended, until February 10th. Upon such return and hearing the creditors knew, if they did not know before, that the assets would fall far short of satisfying the indebtedness, even though the subjects of the alleged preferences were included; still they took no action in either of the courts, state or federal, to prevent the consummation of the sale. On the contrary, they sought and accepted their proportionate shares of the sales proceeds. Such conduct gives emphasis and evidential weight to the very silence of the great body of creditors who are not here urging adjudication. It cannot be that it is the purpose of the Bankruptcy Act to foster and encourage such a change, not to say repudiation, as the interveners now present. The equitable objects of the statute are unmistakable; and apart from every other consideration, the change in position now sought to have sustained is unjust to the other creditors.

It is not a sufficient answer to say that any recovery would be for the common benefit of all the creditors. The apparent adherence of the main body of the creditors to their original course is repellant of such an answer. This situation is unlike that arising on the initial proceedings, where the attitude of creditors other than those petitioning is unimportant, and where no question can arise whether the acts of the petitioning creditors have misled the others. It is not claimed, and it is not seen how it rightfully could be, that the other creditors would have taken the course they did in the state court, if they had known that the present interveners did not mean what their conduct then fairly indicated. Above all, a change in attitude from an assenting to an antagonistic course, under conditions anything like these, has never been sanctioned by any decision to which our attention has been called.

[2-4] Furthermore, it was not necessary that the creditors should adopt the course they did in the state court. Either the original petitioners or the present interveners, in spite of respondent's demand for trial by jury, might have applied in the court below to have the hearing upon the question of adjudication expedited. This does not appear to have been done. It is not to be presumed that such an application would have been denied. They might have applied for an order to stay the sale of the property in the state court, or any other step proposed to be taken in that court. Since the property was in

possession of a receiver appointed by the state court, the application should in the first instance, in obedience to the rule of comity, have been presented to the state court, and it cannot be presumed that the application would have been denied. Carling v. Seymour Lumber Co., 113 Fed. 483, 491, 51 C. C. A. 1 (C. C. A. 5th Cir.); In re Knight (D. C.) 125 Fed. 35, 45, 46. An application so made and denied could not have been employed as an estoppel against further action in the bankruptcy proceeding, since the object would have been to prevent the sale or distribution in the state court. Leidigh Carriage Co. v. Stengel, 95 Fed. 637, 642, 643, 37 C. C. A. 210 (C. C. A. 6th Cir). That decision points the distinction that was made in the Simonson Case, before cited.

Further, in view of the paramount character of the Bankruptcy Law, the jurisdiction of the bankruptcy court, when properly invoked, is exclusive as respects the administration of the affairs of insolvent persons and corporations. The inhibition of section 720 of the Revised Statutes against the issue of injunctions to stay proceedings in a state court, or to take possession of the property, distinctly excepts cases where the injunction is authorized by the bankruptcy law. In re Watts & Sachs, 190 U. S. 1, 27, 30, 23 Sup. Ct. 718, 47 L. Ed. 933. Orders of injunction, where necessary, as to insolvency proceedings pending in state courts, have been of frequent occurrence in bankruptcy courts (New River Coal Land Co. v. Ruffner Bros., 165 Fed. 881, 888, 91 C. C. A. 559 [C. C. A. 4th Cir.]; In re Gutwillig, 92 Fed. 337, 338, 34 C. C. A. 377 [C. C. A. 2d Cir.]; Davis v. Bohle, 92 Fed. 325, 328, 329, 34 C. C. A. 372 [C. C. A. 8th Cir.]; In re Knight, supra); but of course such orders must be sought in respect of proceedings commenced in the state court within the four months period (New River Coal Land Co. v. Ruffner Bros., supra; In re Farrell, 176 Fed. 506, 512, 100 C. C. A. 63, and citations [C. C. A. 6th Cir.]). If the report and hearing upon the offer of sale in the instant case be included, the evidence offered here was then available for all purposes of the adjudication. It follows that the present petitioning creditors had abundant opportunity to protect their interests in the court below, if they had chosen to resort to the remedies open to them. They had the choice, however, both of forums and laws for enforcing such rights as they then desired to have determined; and we do not see why they should not now be precluded from denying that they voluntarily made a final selection of the state tribunal and state laws.

It is true the question is attended with difficulty, but it is believed the safer rule is to hold litigants to the logical consequences of what must be concluded to have been their voluntary action. It is not meant to say that a creditor's action is voluntary where a course adopted by him in a state court is taken in ignorance of certain acts, such as fraudulent transfers, of the debtor. It has been held that where, in such a case, no rights of others have been prejudiced by the conduct of the creditor, he may join in a bankruptcy proceeding to secure his rights (In re Curtis, 94 Fed. 630, 633, 36 C. C. A. 430 [C. C. A. 7th Cir.]); but it is fairly to be implied from the reasoning of the court

in that case that, if the creditor's action in the state court had been taken with knowledge of such transfers, he would upon the theory of election of remedies have been precluded from resorting later to a bankruptcy proceeding. While the theory of preclusion is not of controlling importance, it was doubted in the Simonson Case, 95 Fed. 954, 37 C. C. A. 344, whether the doctrine of election of remedies was applicable. It is enough to say here that these creditors are estopped from prosecuting the proceeding in bankruptcy.

[5] While the assignments fail to set out the error considered, the question was presented at the argument and has been discussed in the briefs, and the error is of such a character that we think it should be noticed under the option reserved in the concluding clause of rule 11 (150 Fed. xxvii, 79 C. C. A. xxvii).

The decree must be reversed, with costs, and with direction to dismiss the petition.