### In re COMMONWEALTH LUMBER CO.

(District Court, W. D. Washington, N. D. June 2, 1915.)

#### No. 5447.

1. BANKRUPTCY ⬩60—ACT OF BANKRUPTCY—APPOINTMENT BY STATE COURT OF RECEIVER—EFFECT.

The appointment by a Washington state court, under Rem. & Bal. Code, § 741, of a receiver of a corporation, is not, in the absence of testimony, a conclusive showing of the insolvency of the corporation, within Bankr.

Act, July 1, 1898, c. 541, § 1, subd. 15, 30 Stat. 544 (Comp. St. 1913, § 9585).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. ☜60.]

2. BANKRUPTCY ☜54—CORPORATIONS—UNPAID STOCK SUBSCRIPTIONS—"ASSETS."

Unpaid subscriptions of stock of a corporation are "assets" of the corporation, in determining whether it is insolvent, within Bankr. Act, § 1, subd. 15, where a stipulation has practically been effected whereby the subscribers would contribute any deficiency to satisfy claims, though there is testimony that the stockholders will contest liability.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 54, 84, 85; Dec. Dig. ☜54.]

3. BANKRUPTCY ☜20—RIGHTS OF CREDITORS—ELECTION OF REMEDIES.

Where a receiver of a corporation was appointed in a state court, the creditors could pursue their remedies in the state courts or proceed under the Bankruptcy Act; and where they induce acts or proceedings in the state court under the receivership, they could not subsequently remove the matter to the bankruptcy court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. ☜20.]

4. BANKRUPTCY ☜20—RIGHTS OF CREDITORS—ELECTION OF REMEDIES;

A state court appointed, after hearing, a receiver of a corporation. Soon thereafter claims of creditors were filed. Thereafter a creditors' committee was appointed to examine into the condition of the corporation and report to the creditors. The committee reported that it was for the best interests of the creditors that the state court should retain jurisdiction. Claims filed were passed on by the receiver. Chattels of a corporation were sold by the receiver under order of court, with knowledge of the creditors' committee. Held, that the creditors participating in the proceedings or acting as members of the committee could not maintain a petition in bankruptcy against the corporation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. ☜20.]

In Bankruptcy. In the matter of proceedings against the Commonwealth Lumber Company, a corporation, an alleged bankrupt. Petition for adjudication dismissed.

Vince H. Faben, of Seattle, Wash., for petitioners.
S. G. Climenson, of Seattle, Wash., for trustee.
Kerr & McCord, of Seattle, Wash., for bankrupt.

NETERER, District Judge. Petition for adjudication in bankruptcy was filed by the Washington Cedar & Fir Products Company, Kent Lumber Company, and Fred A. England, claiming to be creditors in the sums of $641.50, $625.95, and $111.70, respectively. Thereafter the Union Lumber Company and the McCaughey Mill Company filed intervening petitions. It was alleged in the petition as an act of bankruptcy:

That "said Commonwealth Lumber Company, a corporation, is insolvent, and that within four months next preceding the date of this petition the said Commonwealth Lumber Company committed an act of bankruptcy, in that heretofore, to wit, on the 10th day of December, 1914, because of insolvency, a receiver has been put in charge of the property of the said Commonwealth Lumber Company, under the laws of the state of Washington."

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On motion and affidavit a temporary restraining order was issued, and by agreement this was continued until final hearing. An amended petition was filed by the petitioners, in which it was further alleged that the petitioners have not participated in the receivership proceedings, except to file their claims with the receiver, and make other allegations with relation to the administration of the trust in the state court. The receiver filed an answer, in which he alleges that the capital stock of the Commonwealth Lumber Company is $150,000, of which $94,000 has been subscribed; denies indebtedness to the Washington Cedar & Fir Company; denies the insolvency of the Commonwealth Lumber Company within the Bankruptcy Act; denies it was insolvent within such act at the time of appointment of the receiver; alleges that at the time the receiver was appointed the Commonwealth Lumber Company had actual, visible, and tangible assets to the extent of $74,411.74 over and above its admitted indebtedness, that by reason of the inactivity of the lumber market it was unable to meet its indebtedness as it matured, that the receiver, subsequent to his appointment, paid claims having priority to the extent of $387.50, paid secured claims to the amount of $23,864.50, and now has on hand the sum of $3,164.02, and the indebtedness of the company is only $19,280.95; denies that the petitioners did not participate in the receivership proceedings other than to file their claims; alleges various acts and conduct of the creditors with relation to the receivership; and further alleges that practically all of the expenses of the receivership to date have been paid, and that the receiver had applied to the state court for an order directing the payment of a 15 per cent. dividend to the common creditors, and that the proceedings in bankruptcy were not instituted in good faith.

A hearing on the merits was had, and from the evidence presented it appeared that the petitioning creditors did file their claims with the receiver, and likewise co-operated through a committee of creditors with relation to the receivership proceedings, and did call upon one of the presiding judges of the state court with certain requests in the administration of the estate through the receivership; that a controversy developed between the creditors' committee and the receiver and his attorney, which continued until on the 29th of March, 1915, when the petition in bankruptcy was filed. It further appeared that the indebtedness of the Commonwealth Lumber Company at this time is less than $20,000, and that in addition to the cash and book accounts there are unpaid stock subscriptions which are collectible in the aggregate of approximately $68,000.

It is contended on the part of the respondent that the Commonwealth Lumber Company is not insolvent within the meaning of the Bankruptcy Act; that at no time was the property of the Commonwealth Lumber Company in "the aggregate, * * * at a fair valuation, insufficient in amount to pay its debts." Section 1, subd. 15, Bankr. Act. It is further contended that the creditors, having participated in the receivership, are estopped from instituting this proceeding.

[1] The act of bankruptcy alleged in the petition is putting the corporation in charge of a receiver by the state court. Section 3 (a) of the Bankruptcy Act, as amended, provides:

"Acts of bankruptcy by a person shall consist of his having * * * (4) made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States. * * *"

The petitioners contend that the state court having appointed a receiver "for the reason that said corporation is utterly insolvent and unable to meet or pay its obligations" is a finding which is conclusive, and adjudication must now follow. There is no doubt that a receiver may be appointed in the state court for a corporation in financial depression, when bankruptcy proceedings could not be entertained. The statute of Washington authorizes the appointment of a receiver when a corporation is in *imminent danger* of insolvency (section 741, Rem. & Bal. Washington Code), and the state court holds that a corporation is insolvent when it is unable to meet its obligations as they mature in the ordinary course of business (State ex rel. v. Superior Court, 20 Wash. 575, 59 Pac. 483; Nixon v. Hendy Machine Works, 51 Wash. 419, 99 Pac. 11); while under the Bankruptcy Act, when the assets at a fair valuation do not equal the liabilities, a corporation is insolvent (section 1, subd. 15, Bankr. Act). Petitioners rely on In re Maplecroft Mills (D. C.) 218 Fed. 661, in which the District Court of the Fourth District held the appointment of a receiver under the South Carolina code provision that a receiver may be appointed when a corporation is "in imminent danger" of insolvency, and at page 673, the court says:

"Under the evidence in the case now before the court it is found that the only ground upon which the state court, to wit, the court of common pleas for Pickens county, could possibly have made the order of appointment of a receiver and taken possession of, to operate and eventually liquidate and marshal and distribute, the assets of the Maplecroft Mills, under the allegations of the complaint, was because of insolvency. The Supreme Court of the state of South Carolina has approved, for the state courts of the state of South Carolina, the same definition of insolvency as that given in the Bankruptcy Act (citing case). Where the court of common pleas for Pickens county appointed a receiver because of insolvency, it must be presumed that it found under the laws of South Carolina it was such an insolvency as is defined to be insolvency in the Bankruptcy Act, and that it adjudicated that question as against the Maplecroft Mills, so as to determine it as well for these proceedings as for those in the state court."

The Circuit Court of Appeals of the First Circuit (In Re Wm. S. Butler & Co., Inc., 207 Fed. 705, 125 C. C. A. 223), Judge Putnam dissenting, held that the appointment of a receiver to assume control of the business and conduct the affairs of a corporation until further ordered, on a complaint, answer, and decree, for the reason that the corporation was unable to meet its obligations as they matured in the ordinary course of business, in the absence of an allegation that the corporation's property, at a fair valuation, was insufficient to pay its debts, was not a finding of insolvency within the act of bankruptcy.

The Supreme Court of Washington recognizes a distinction between insolvency under the Bankruptcy Act and state statute. State ex rel. v. Superior Court, supra. I do not think that the finding of the state court upon the allegations of the complaint, in the absence of testimony, is conclusive of the insolvency of the corporation in issue, under the Bankruptcy Act, in this proceeding.

[2] Whether the corporation is in fact insolvent under the Bankruptcy Act depends upon the enforceability of the stock subscriptions and whether this liability can be considered an asset. Petitioners, to sustain their contention that unpaid stock subscriptions are not assets, rely on Wilkes-Barre First National Bank v. Wyoming Valley Ice Co. (D. C.) 136 Fed. 466. I do not think this case sustains their contention. The court, at page 469, says:

"Neither is anything to be made out, on the other side of the account, of what is claimed to be due from the holders of bonus stock. It is no doubt true that the parties who accepted this stock were well aware of its origin, having assisted as directors in issuing it to Mr. Young, in consideration of the contracts and options which he turned over to the company. But even though this be the case, and although it should be determined in the end that they are severally liable, to the extent of their holdings, as for stock which remains unpaid, the liability amounts to nothing as an asset to be reckoned with at this time. If ever secured, it will only be at the end of a lawsuit, all the parties expressly declaring that they should contest their liability, and no possible value can therefor be ascribed to it here."

In the instant case there was testimony that the stock subscribers would contest liability. There was also testimony that a stipulation had practically been effected whereby the subscribers would contribute any deficiency to satisfy claims. I think the overwhelming weight of authority, as well as sound reason, make unpaid stock subscriptions an asset. In Republic Iron & Steel Co. v. Carlton (C. C.) 189 Fed. 126, the court, at page 131, says:

"The plaintiff in the case at bar says the defendant has never fully paid for his stock. The defendant, therefor, at common law and independent of statute, is liable to the company for the unpaid balance of his subscription. The right to recover such balance is an asset of the company. It is an asset which does pass to a receiver or to a trustee in bankruptcy. Colton v. Mayer, 90 Md. 712, 45 Atl. 874 [47 L. R. A. 617, 78 Am. St. Rep. 456]; Scovill v. Thayer, 105 U. S. 143 [26 L. Ed. 968]; In re Remington Automobile Co., 153 Fed. 345 [82 C. C. A. 421]."

In Richardson's Executor v. Green, 133 U. S. 30, at page 46, 10 Sup. Ct. 280, at page 285, 33 L. Ed. 516, the court says:

"The principle underlying all of the decisions which we have cited upon this point is that the capital stock of a corporation, when it becomes insolvent, is in law assets of the corporation to be appropriated to the payment of its debts."

There is a difference in the status of liability for unpaid stock subscriptions and a stockholder's statutory liability. The liability of a stockholder, fixed by the statutes of many states for the purpose of paying indebtedness of a corporation, is a contingent liability, while the liability for unpaid stock subscriptions is primary. The primary liability is an asset, while the contingent liability may not be; but the right to enforce it is inherent in the corporation, and upon insolvency

passes to the trustee for recovery. Unpaid stock subscriptions being an asset, the corporation is not insolvent within the Bankruptcy Act. ·

[3, 4] I think the relation of the petitioners in this case to the receivership is fatal to this proceeding. When the receivership was inaugurated in the state court, the creditors had a right to select the forum in which to administer the estate of the concern, and, having once selected, cannot, after having induced any acts or proceedings in the state court, repudiate the proceedings and remove the matter to the bankruptcy court. It appears from the record, and the testimony upon the hearing, that the application for appointment of a receiver was made, and a receiver appointed, on December 10, 1914, and soon thereafter the claims of the petitioners were filed. At a meeting of creditors, held December 21st, following, a committee was appointed to inquire into the condition and affairs of the Commonwealth Lumber Company, and report to the creditors, advising as to the future policy in settling the estate. Two members of the committee of four were the president and vice president, respectively, of two of the petitioners in this proceeding. In a letter to the creditors, signed by the committee, dated December 23, 1914, it is said:

"In the opinion of the committee the present receiver is fully qualified to handle the affairs of the estate, and we consider that it is for our best interest that he be retained in the superior court as such receiver, and that we would look with disfavor on the matter being taken in the federal court in bankruptcy."

Some of the claims had been filed, and others were filed a few days later. The claims were passed upon by the receiver, and the claim of one petitioner was disallowed. Further correspondence was had with relation to the administration of the estate, and an assessment of 4 per cent. upon the creditor's claims, for the purpose of employing counsel to assist the attorney for the receiver to bring suit against stockholders on the unpaid stock subscriptions, was made, and paid by at least some of the creditors. No order was granted by the state court, permitting the receiver to sue at the time upon the stock subscriptions, and further correspondence and conferences resulted in the statement that, unless certain lines of procedure were adopted by the receiver and the state court, the creditors would remove the matter to the bankruptcy court. It further appears that office furniture, fixtures, and certain tangible personal property was sold by the receiver under the order of court, all of which was known to the creditors' committee; some of the petitioners being present at the sale and bidding upon the property. There can be no question, from the record and testimony in this case, that the creditors' committee, who represented the petitioners, did, after the appointment of the receiver by the state court, so act with relation to such receivership, and gave such encouragement to the state court proceedings, as to inspire others to act with relation to such receivership, and that this court should not, after such conduct and inspiration, permit the parties to invoke the jurisdiction of this court, after a period of nearly four months. I think the court should hold that the conduct of the petitioners was an election, and that, having elected, they are bound by such election. I think this

conclusion is sustained by sound reason and authority. Simonson v. Sinsheimer, 95 Fed. 948, 37 C. C. A. 337; Lowenstein v. McShane Mfg. Co. (D. C.) 130 Fed. 1007.

Petitioners cite Leidigh Carriage Co. v. Stengel, 95 Fed. 637, 37 C. C. A. 210, and In re Salmon & Salmon (D. C.) 143 Fed. 395. The first case was tried before Circuit Judge Taft, of the Sixth Circuit, at about the time of the Simonson Case, supra. In this case it appears that the assignment was made some time prior to the enactment of the Bankruptcy Act of 1898, and immediately upon the Bankruptcy Act becoming effective the petitioner promptly invoked its aid, and it was held he could not be estopped, since he had no election prior to the time that the Bankruptcy Act took effect. In the Salmon Case it was held that the creditors of an insolvent partnership are not estopped to maintain proceedings to have the debtors adjudged involuntary bankrupts because of filing and proving their claims in a suit prosecuted in the state court under a state statute for winding up the affairs of a bank owned by the partnership, instituted after the filing of the petition in bankruptcy, where the alleged act of bankruptcy was the conveyance of property not employed in the banking business nor involved in the state suit.

I think the petition should be dismissed. An order may be presented.